## WILLIAMS v. STATE, USE, FRANKLIN COUNTY.

1. INTEREST: *Statute Limitations. Whether suspended by the war.*
The statute of Limitations was suspended during the war, whether in actions between belligerents or between residents within the Confederate States; but the running of interest upon debts, between citizens of the same belligerent power, was not suspended by the war between the states.

2. ACTION: *On bonds to common school commissioner. Judicial notice.*
Since the adoption of the Act of 23d of July, 1878, " to maintain a
system of free common schools," the State can sue on bonds previ-
ously executed to the common school commissioner of a county,
without any assignment of the bond, and without stating in her
complaint how she acquired the right to sue. The statutes show
this, and the Courts will take judicial notice of it.

APPEAL from *Franklin* Circuit Court.

Hon. W. D. JACOWAY, Circuit Judge.

*Clark & Williams*, for appellant.

There is no assignment of the note, and no allegation or
evidence of the appellee's title. *Alsteen* v. *Heartman*, 2
*Ala.*, 699 ; *Moore* v. *Penn*, 5 *Ala.*, 135 ; *Chaplin* v. *Can-
ada*, 8 *Com.*, 286. Plaintiff must show by what right he
claims in order to maintain his action. *Montague* v.
*Remeyer*, 11 *Iowa*, 503. See also 9 *Gray (Mass.)* 331 ;
*Hempst*, 48 ; 6 *Blackf. (Ind.)* 154 ; 8 *B' Mon, (Ky.)* 474 ;
30 *Ala.*, 677 ; 2 *Stern and P. (Ala.)* 134 ; 2 *Minn.*, 219 ;
3 *Duer (N. Y.)* 615 ; 18 *Cal.* 390 ; 3 *Blackf. (Ind.)* 405 ;
11 *Iowa*, 503. And even if the State had a right to sue, by
virtue of statute making her the successor of Nixon, she
must state the facts constituting her title. *Parker* v. *Tot-
ten*, 10 *How. (N, Y.) Pr.* 233 ; *Mechanic's B'k* v. *Don-
nell, Mo.*, 373.

The suit in the name of the State, for use of school fund, is
not authorized. *Acts* 1868, *p.* 163 ; *Acts* 1873, 392 ; *Acts*
1875, *p.* 54 ; *Acts* 1852–3, *p.* 143 ; *Acts* 1850, *p.* 114 ; *Acts*
1848, *p.* 87, *etc.*

The war did not suspend the statute of limitations, both
parties being citizens of the same belligerent power.　3
*Cranch*, 454 ; 50 *Ill.*, 186 ; 20 *La., An.*, 131 ; 2 *Nott &
McCord (S. C.)* 498 ; 2 *Dall.*, 102–32 ; 1 *Des.*, 537 ; 4

*Ran.* (*Va.*) 264; 20 *La., An.,* 284, 397, 422, 427; *Com. Penn. C. C't,* 496.

The decisions in *Hanger* v. *Abbott,* 6 *Wall,* 532; *Brown* v. *Sauerwin,* 10 *Ib.,* 218; *Semmes* v. *Ins. Co.,* 13 *Ib.,* 158; *Brown* v. *Hiatt's,* 15 *Ib.,* 177; were put upon the express grounds that the parties were enemies in the war, disabled to sue by non-intercourse, closing of courts, etc.

*Ross* v. *Jones,* 22 *Wall,* 576, was the first case in which the court abandoned its former decisions, and held that the statute was suspended during the war in the rebellious states, etc.; and the doctrine thus laid down and followed in subsequent decisions is repudiated in *Smith* v. *Ins. Co.,* 64 *Mo.,* 330; 41 *Ga.,* 231; 43 *Miss.,* 90, 268; 35 *Ind.,* 124; 6 *W. Va.,* 301; 11 *Bush* (*Ky.*) 191; 27 *Gratt* (*Va.*) 587; 9 *W. Va.,* 616; 40 *Wis.,* 622; 7 *Daly* (*N. Y.*) 249; 66 *Ill.,* 288.

The true doctrine in this State was held in *Bennett* v. *Worthington,* 24 *Ark.,* 287, and the subsequent cases of *Met. Bk.* v. *Gordon,* 28 *Ark.,* 115; *Eddins* v. *Grady, Ib.,* 500; *Hall* v. *Denckla, Ib.,* 506; *Mayo* v. *Cartright* 30 *Ib.,* 407; *Shinn* v. *Tucker,* 32 *Ib.,* 421, *etc.,* are utterly without authority to sustain them.

The question of the suspension of the Statute by the war is not before the court at all in this case. Defendant pleaded the Statute, and there was no reply. Where new matter relied on in avoidance is a departure from the original cause of action in the complaint, plaintiff should amend by setting up such new matter. *Ridgely* v. *Price,* 16 *B. Mon.,* 414.

Where limitation is suspended by war, interest is also suspended. 28 *Gratt* (*Va.*), 207; 15 *Wall.,* 177; 1 *Sawyer,* 401; 2 *Dall.,* 102, 132; 3 *Call.* (*Va.*), 22; 1 *Des.* (*S. C.*), 537; 1 *Hugh.,* 310; 4 *Rand.* (*Va.*), 264; 37 *Gro.,* 482.

ENGLISH, C. J. This suit was commenced in the Circuit Court of Franklin county, on the third of March, 1876, upon the following writing obligatory:

"Twelve months after date we, or either of us, promise to pay G. W. C. Nixon, Common School Commissioner of Franklin county, or his successor in office, the sum of eleven hundred and forty-five dollars and twenty-eight cents, with interest at eight per cent. per annum, payable semi-annually in advance, for value received. Witness our hands and seals this July the 1st, 1860.

"JOHN WILLIAMS. [SEAL.]

"MILES W. WILLIAMS. [SEAL.]"

The suit was brought in the name of the State, for the use of the School Fund of Franklin county, against both of the obligors, but was finally discontinued as to Miles W. Williams, who was not served with process.

I. The complaint alleged that the interest was paid up to July, 1861, after which no interest was paid.

The case was tried on plea of the Statute of Limitations of ten years, November 29th, 1878, and there was a verdict in favor of the State against appellant, John Williams, for two thousand three hundred and forty-one dollars and sixty-two cents ($2,341.62), and a new trial refused.

The interest was calculated by the jury at six per cent. from the maturity of the obligation to the date of the verdict, under an instruction by the court, there being upon the face of the instrument no contract for interest at eight per cent. beyond its maturity, for want of the words "until paid."

This instruction, which was objected to by appellant, will be referred to again below.

1. STATUTE LIMITATIONS: Suspended by the war.

II. The plea of appellant, on which the case was finally tried, was simply that the plaintiff's cause of action did not accrue within ten years next before the commencement of the suit.

The court instructed the jury, against the objection of appellant, "that if they believed, from the evidence, that the note was due on the first of July, 1861, and that the action was commenced on the third day of March, 1876, and that it was commenced within ten years, after deducting four years, ten months and twenty-six days, the time the Statute ceased to run, they would find for the plaintiff."

And the court refused to instruct the jury, in effect, as moved by appellant, that they must count the whole period from the maturity of the obligation to the commencement of the suit.

There was no replication to the plea of limitation setting up the war, and none is required or allowed to such plea by our Code practice. Nor did the plaintiff prove that there was any war between the maturity of the obligation and the commencement of the suit.

But the court properly took judicial notice of the public fact, as legally and historically established, that the civil war was flagrant in this State from the sixth of May, 1861, to the second of April, 1866, and followed the decisions of this court, that the Statutes of Limitation were suspended during that period. *Mayo et al* v. *Cartwright, ad., et al.,* 30 *Ark.,* 412; *Shinn* v. *Tucker,* 33 *Ib.,* 424; *Worthington's adm.* v. *DeBarlekin, ad., Ib.,* 656.

In fixing the length of the period of suspension at four years, ten months and twenty-six days, the court followed the computation of this court in *Shinn* v. *Tucker, sup.*

But the court erred in applying that computation in this case, because the obligation did not mature, and the Statute would not have commenced running, had there been no war, until the first of July, 1861. The time deducted in this case should have been from the maturity of the obligation to the second of April, 1866, a period of about four years,

nine months and one day.   But appellant was not preju-
diced by this error, because, from the maturity of the obli-
gation to the third of March, 1876, when the suit was com-
menced, was a period of about fourteen years, eight months
and two days ; and deducting from that period four years,
nine months and one day, it left about nine years, eleven
months and one day.   So the action was not barred when
commenced, if the Statute ran against the State, a question
not presented in this case.

In holding that the Statute of Limitations was suspended
during the war, whether in suits between persons who had
been belligerents, or in actions between persons who resided
within the Confederate lines, this court followed the de-
cisions of the Supreme Court of the United States, and the
question must be regarded as settled.

III.   The court refused to give the following instruction
moved for appellant :

"That the amended complaint filed in this cause, chang-
ing the party plaintiff from that of Franklin county to
that of the State of Arkansas, constituted the present pro-
ceeding a new and different action.   And if the jury be-
lieve, from the evidence, that the cause of action on the
obligation in suit did not accrue at any time within ten years
next before the filing of said amended complaint, they
must find for the defendant."

To understand this instruction, a brief statement of the
pleadings, etc., in the case before the final trial, is neces-
sary.

In the original complaint, which was in the name of the
State, for the use of the school fund of Franklin county,
the obligation sued on was described; a copy exhibited, pay-
ment of the interest to maturity admitted, and judgment
prayed for principal and interest, which were alleged to be
unpaid.

At the April Term, 1876, appellant, on whom the writ, corresponding with the complaint in the style of the suit, etc., had been served, demurred to the complaint on the following grounds, in substance:

*First.* That the State was not shown to be interested in the fund sought to be collected, and the obligation sued on was executed to Nixon, Common School Commissioner of Franklin county, or his successor in office.

*Second.* That the county of Franklin was a necessary party, but not made a party.

*Third.* That the collector of Franklin county was the successor of Nixon, and entitled to collect the obligation sued on, if any person was, but he was not made a party.

Before any decision was made on this demurrer, the plaintiff, at the same term, asked and obtained leave to file an amended complaint; and filed an amended complaint in the name of Franklin county, as plaintiff.

To this amended complaint appellant filed a demurrer, assigning causes not important to state. Nothing further appears to have been done in the cause at that time.

At the November Term, 1877, the plaintiff and appellant appeared by their attorneys, and the court, by consent of plaintiff, struck from the files the amended complaint theretofore filed. Whereupon, argument was heard on the demurrer to the original complaint, and the court sustained the demurrer as to the first cause assigned therein, and gave leave to amend the complaint.

On the next day (twenty-third of November, 1877,) an amended complaint was accordingly filed, in the name of the State for the use of the school fund of Franklin county, in which the obligation in suit was set out as in the original complaint, and the consideration for which it was executed stated, etc.; which will be more particularly noticed when we come to consider the proposition that this amended com-

plaint showed no right in the State to sue upon the obligation.

To this amended complaint the appellant pleaded that plaintiff's cause of action did not accrue within ten years next before the commencement of the suit; to which plaintiff demurred; the court sustained the demurrer; appellant rested, and judgment was rendered against him for the principal of the obligation, and interest from maturity at eight per cent. per annum.

On the next day this judgment was set aside, by consent of parties, and the cause continued, with leave to appellant to file a demurrer to the complaint at the next term, and also an answer in lieu of the answer theretofore filed.

At the May Term, 1878, appellant demurred to the amended complaint on the ground that it did not contain facts sufficient to constitute a cause of action.

He also filed an answer, in which he stated that the so-called amended complaint, changing the party plaintiff from that of Franklin county to that of the State of Arkansas, constituted the present proceeding a new and different action, and not the same action mentioned in prior proceedings. He further answered that the State had no right or title to the note sued on, and no right of action thereon. And, further, that the cause of action on said note, or obligation, did not accrue within ten years next before the filing of said new or so-called amended complaint; which, he averred, was the commencement of this action.

On the filing of the demurrer and answer, the plaintiff, by leave of the court, amended the complaint by interlineation, and, thereupon, the demurrer was overruled.

By leave of the court, the name of Miles W. Williams, as a defendant, was stricken out—he not having been served with process.

And plaintiff demurred to the answer of appellant (twenty-first of May, 1878,) on the grounds:

*First.* That the first paragraph did not constitute a sufficient answer to the complaint.

*Second.* That the second paragraph raised a question of law, which should have been presented by demurrer.

This demurrer to the answer was not decided by the court, but, on the twenty-fifth of May, 1878, appellant filed the answer, on which the case was finally tried, that the plaintiff's cause of action did not accrue within ten years next before the commencement of the suit.

The original suit, it is manifest from the whole record, was never dismissed, discontinued, or permanently abandoned; but was prosecuted to final trial and judgment. It is true, that when the original complaint was demurred to, the attorney for the State seemed to be in doubt as to whether the suit upon the obligation was properly brought in the name of the State, and filed an amended complaint, substituting Franklin county as plaintiff, which was afterwards struck from the files by his consent, the demurrer to the original complaint taken up, partially sustained, an amended complaint filed in the name of the State, on which, as further amended by interlineation, the suit progressed to final judgment in favor of the State. The instruction above copied was, therefore, rightly refused.

IV. We will now turn back to the instruction of the court, in which the jury were told, against the objection of appellant, to allow interest upon the obligation from its maturity to the time of the trial. It is submitted, for appellant, that no interest should have been allowed during the period of the suspension of the Statute of Limitation by the war.

INTER-EST: Not suspended by the war as between Confederates.

The obligation sued on was executed in this State, and made payable to the Common School Commissioner of

Franklin county. Appellant did not, by any pleading, show that he was a citizen, or resident, of any State or Territory adhering to the Federal Government during the period of the war.

In *Brown* v. *Hyatt*, 15 *Wallace*, 177, Brown, a citizen of Virginia, in May, 1860, loaned Hyatt, a citizen of Kansas, money, and took a mortgage from him and his wife on land to secure the payment of the debt. After the war, a suit was brought to foreclose the mortgage, and the Supreme Court of the United States held that inasmuch as it was not lawful for Hyatt to pay the debt to Brown during the war, no interest should be allowed upon it during the period in which its payment was prohibited.

Though the same court has repeatedly held that the Statute of Limitation was suspended during the war, in suits between persons residing in the Southern States, on the theory that the courts were closed, or the administration of justice interrupted, it has decided in no case, that we are aware of, in such suits, that interest should not be allowed during that period.

In *Roberts, ad.,* v. *Cocke*, 28 *Grattan*, 207, the Supreme Court of Appeals of Virginia decided that an act passed by the Legislature of that State, requiring the courts to remit interest in suits on contracts entered into prior to the tenth of April, 1865, for a period during the civil war, was unconstitutional and void, as impairing the obligation of contracts. The suit was between Virginians, on contracts made in that State in 1860, and the act was passed on the second of April, 1873.

JUSTICE BURKS, who delivered the opinion of the court, said: "If, during the late war between the United States and the Confederate States, the defendants, Cocke and Carter, had resided within the territory under the dominion of one of the belligerent powers, and their creditor had

resided in the territory of the other of said powers, they would have been entitled, independent of the Statute in question, to an abatement of the interest during the time the war lasted. Such is the rule of the public law applicable to a war between independent nations, and at an early period after the termination of the late war between the States, it was applied by the courts to that war, etc., etc.

"If, therefore, Cocke and Carter (defendants in error) had been alien enemies in respect of their creditor, they would have been entitled to an abatement of the interest on their debt for the period covered by the war, and might have made their defense, certainly under a special plea, and perhaps, under the plea of payment, etc. But, as no such defense was made, it is to be presumed, if indeed, it may not be inferred, from the record, that the facts did not warrant the defense.

"The averment, which seems to be the gist of the third plea, that the principal money 'was not worth any interest to the defendants during the war,' was no bar to the plaintiff's right to recover. The defendants, by their bond, expressly stipulated for continuing interest on the debt without any exception of the period of the war, should one occur, and the law, as the general rule, makes no such exception, where the contracting parties make none. It may be true that the defendants derived no benefit from the use of the principal money during the war. This may have been their fault, or their misfortune; but whether the one or the other, the contract was not affected by it. They were at liberty, under the contract, to discharge the obligation at any time by payment, according to its terms, of the principal sum and accrued interest. They neither paid, nor offered to pay, any part of either, and while they withheld another's money, it does not lie in their mouths to say that they derived no benefit from it, and, therefore, should not

be required to pay for the use of it that compensation which they had agreed to pay.''

The opinion, after holding that interest laws existing at the time contracts are made, enter into and form part of them, says further:

''In the case of *McCall* v. *Turner*, 1 *Call.*, 133, there are expressions in the opinions of several of the judges which might indicate that, under the law as it then stood, they thought that juries were invested with discretion to abate interest in all cases during war. But these expressions are mere *dicta*, and have no controlling influence as authority. The case decided was a controversy between parties who were considered as occupying the relation to each other of alien enemies during the revolutionary war, and the interest during the war was, therefore, properly abated.

'' *Ambler's Ex'rs* v. *Macon, etc.*, 4 *Call*, 605, decided in 1803, contains a *dictum* of Judge Pendleton, that interest during the war ought not in justice and equity to have been allowed on debts due to domestic creditors no more than to foreign, but since it has not been attended to, either in practice or judicial decisions, until so much business has been otherwise adjusted, it would be unjust at this late era to introduce it in a particular case, unless in one attended with particular circumstances,''

'' Afterwards in 1804, came on the case *Hawkins' Ex'rs.* v. *Minor, etc.*,. 5 *Call* 118, which was an appeal from a decree pronounced by Chancellor WYTHE in the High Court of Chancery. One of the errors assigned on the appeal was, that the chancellor had disallowed interest for the period of the revolutionary war, in a case where both creditor and debtor resided during the war in Virginia; and the court unanimously held that the disallowance by the chancellor of the interest for said period was erroneous.''

''In the case of *Crenshaw* v. *Siegfried*, 24 *Gratt*, 274,

one of the questions decided by this court was, that it was.
error in the court below to deduct interest during the war on
a bond given before the war for the payment of a sum of
money with interest from date.   As the decree by which this
deduction was made was pronounced prior to the passage of
the Act of the Legislature, the validity of which is drawn in
question in the case now before us, this court did not in that
case, pass upon the validity of said Act.   But Judge MON-
CURE, in delivering the opinion of the court, said :   " Cer-
tainly the use of the money is a valuable and legal consider-
ation  for a promise to pay legal interest thereon, and even
an Act of the Legislature passed to annul or impair such
promise would be unconstitutional and void.   Of course a.
decree declaring such a promise to be void, even in the absence
of such an act, must therefore be erroneous."   After deciding
the act in question to be unconstitutional, the court proceeds to
say :   " And we are further of opinion, that the mere exist-
ence of the late war between the United States and the Con-
federate States does not, alone, furnish any legal ground for
the abatement of interest on debts upon contracts during the
time such war lasted.   We do not mean to say, however,
that there may not be special cases, attended with circum-
stances connected with or growing out of the war, which
would furnish legal cause for abatement of interest.   When
such cases arise, they must be decided according to the law
applicable to the peculiar facts and circumstances of each
case.   We can only lay down the general rule."

In this case appellant pleaded no facts to show that he had
any just claim to an abatement of interest during the period
of the war.

V.   We will now consider the question whether the State
had any right of action on the obligation in suit.

The complaint as finally amended, in addition to the alle-
gations above noticed, alleged, in substance, that the obliga-

ACTION.
on bonds
to Com-
mon Sch-
ool Com-
missioner.
Judicial
notice.

·tion in suit was executed by the defendants (John and Miles Williams) to Nixon as Common School Commissioner of Franklin county, for money borrowed by them of him in his official capacity, and which belonged to him as such commis·sioner, as funds set apart by the laws and statutes of the ·State for the purposes of education, and that the principal and accrued interest upon the obligation were now due and ·owing to the plaintiff, the State of Arkansas, for educational purposes, etc.

How the State became the owner of the obligation, and entitled to sue thereon for the debt and interest, is not alleged in the complaint, and if by reason of public legislative enactments, it was not necessary to plead them, for the court would take judicial notice of them. *Davis* v. *Calvert*, 17 *Ark.*, 88.

·By the Act of July 23d, 1868, to establish and maintain a system of free common schools for the State (*Acts of* 1868, *p.* 163) the office of common school commissioner as previously provided for (*See Gould's Dig.*, *p.* 985, *etc.*), was impliedly abolished, and has never been re-established. So when this suit was commenced, Nixon, to whom the obligation sued on was made payable, officially, was not Common School Commissioner of Franklin county, nor had he then any successor in office, for the office did not exist.

By provisions of the Act of twenty-third of July, 1868, all monies, bonds, etc., etc., then belonging to any fund for purposes of education, were made the common school fund ·of the State, and the common property of the State, and were required to be paid directly into the State Treasury, and if not paid, might be recovered by action ·to be prosecuted by the Attorney-General of the State, or a District Attorney, when directed by the State Board of Commissioners of the Common School fund provided for in the Act. *See Secs.* 1–8. These provisions were carried into

the subsequent Common School Acts, with an exception which will be presently noticed.

The amended complaint alleged that the obligation in suit was executed to the commissioner for money borrowed of him by the obligors, which had been set apart by the laws of the State for purposes of education ; and no doubt the obligation vested in the State for common school purposes by the provisions of the Act of twenty-third of July, 1868.

No assignment by the commissioner of the obligation to the State was requisite to enable the State to sue upon it.    The statute transferred the title.    Moreover the State could sue under the code as the real party in interest, having control of the fund.    *Gantt's Digest, Sec.* 4469.

In the Common School Act of Dec. 7th, 1875, the proceeds arising from the sale or lease of sixteenth sections are excepted out of the Common School Fund of the State. *Sec.* 1.

The counsel for appellant assume that the obligation in suit was for money derived from the sale of sixteenth sections, because they say this court judicially knows that the county commissioners had no other funds to loan, and had no authority to loan any other.

With all due respect to the learned counsel, this court does not judicially know any such thing.    On the contrary by the Statute in force when the obligation was executed, the County Commissioners were the custodians of proceeds of the sales of seminary and saline lands, and of monies arising from escheats, fines, forfeitures, etc., which were devoted to educational purposes, and they were authorized to make loans out of the school funds in their hands, and devote the interest to school purposes.    *See Gould's Dig., Chap.* 154, *Secs.* 26, 28.

If the obligation was in fact executed for a loan of money arising from sales of sixteenth sections, and if such fact

would have defeated the right of the State to sue on the obligation, it should have been pleaded. Appellant demurred to the complaint, and after the demurrer was overruled, finally went to trial on no other plea than the statute of limitation.

The judgment of the court below must be affirmed.