[No. 2288]

## GEORGE E. McCRACKEN, RESPONDENT, v. THE STATE OF NEVADA, APPELLANT.

[167 Pac. 1001]

1. SCHOOLS AND SCHOOL DISTRICTS—OFFICERS—COMPENSATION.
   Stats. 1911, c. 133, sec. 13, provides that claims for traveling expenses of deputy superintendent of public instruction, etc., shall be paid from the general fund. Stats. 1915, c. 177, sec. 28, provides for the actual traveling and office expenses of deputy superintendent of public instruction, district No. 3, $1,750. *Held*, that the deputy superintendent of public instruction for such district could not recover under the first act cited for traveling expenses incurred during the year 1916; such act being superseded or suspended by the appropriation of the act of 1915.

2. SCHOOLS AND SCHOOL DISTRICTS — OFFICERS — COMPENSATION — APPROPRIATION—STATUTES—SUFFICIENCY.
   Const. art. 4, sec. 19, provides: "No money shall be drawn from the treasury but in consequence of appropriations made by law." Stats. 1915, c. 76, provides: "No warrant shall be drawn on the treasury, except there be an unexhausted specific appropriation, by law, to meet the same." *Held*, that Stats. 1911. c. 133, sec. 13, was sufficient to make appropriation for claims arising under it, and that, as the legislature made no appropriation in 1917, respondent's deputy superintendent of public instruction could recover under section 13 for expenses for the year 1917.

3. STATES—APPROPRIATIONS—SUFFICIENCY OF STATUTE.
   No particular form of words is necessary for the purpose of an appropriation, and an appropriation may be made in one year of the revenues to accrue in another or future year.

APPEAL from the First Judicial District Court, Ormsby County; *Frank P. Langan*, Judge.

Suit by George E. McCracken against the State. From an order overruling its demurrer, and from a judgment for plaintiff for the amount sued for, the State appeals. **Judgment modified and affirmed.**

*Geo. B. Thatcher*, Attorney-General, and *Wm. McKnight*, Deputy Attorney-General, for Appellant:

The demurrer should have been sustained, because there is no allegation of an unexhausted specific appropriation, and section 13 of the school law does not make an appropriation for the traveling and office expenses of deputy superintendents. The state controller is forbidden to

draw any warrant on the treasury except there be an unexhausted specific appropriation by law to meet the same. (Stats. 1915, 94; *State ex rel. Pyne* v. *LaGrave*, 23 Nev. 27; *State ex rel. Davis* v. *Eggers*, 29 Nev. 469, 486.)

There is a vast difference between having money in the general fund, or in any other fund, and having an unexhausted specific appropriation. "Fund" and "appropriation" are not synonymous terms; a distinction is of necessity made between them in the statutes. (Stats. 1915, 95; *Marshall* v. *Dunn*, 69 Cal. 223.)

However, it seems unnecessary to rely entirely upon this point, or upon the fact that no allegation is made, to indicate that the claims for the 1916 traveling expenses were allowed by the board of examiners during the year 1916 and previous to the time any unexpended balance in the appropriation had reverted. (Stats. 1915, 95; *State ex rel. Wilkins* v. *Halleck*, 20 Nev. 73, 74; *State ex rel. Cutting* v. *LaGrave*, 23 Nev. 120, 126; *State ex rel. Fowler* v. *Eggers*, 33 Nev. 535, 539); nor upon the fact that no allegation is made to indicate that the claims in question were presented to the state controller for his allowance (*State* v. *Doron*, 5 Nev. 399); nor upon any of the many other objections which might be raised, because of the fact that we believe section 13 does not make an appropriation for the payment of the traveling and office expenses of the deputy superintendents.

The main question now before the court is whether the language used in section 3251, Revised Laws, applicable to the present case, is sufficient, in and by itself, to constitute an appropriation for the payment of the traveling and office expenses of the deputy superintendents. In every case where an appropriation is concerned it is a question of legislative intent, to be ascertained under settled rules of construction from the language used, the context, the necessities and purposes to be accomplished, in the light of contemporaneous circumstances. (*Menefee* v. *Askew*, 107 Pac. 159, 27 L. R. A. n. s. 537, 540; *Shattuck* v. *Kincaid*, 49 Pac. 758, 760.) The leading rule for the construction of statutes is to ascertain the intention of

the legislature in enacting the statute; and the intent, when ascertained, will prevail over the literal sense. (*State* v. *Ross,* 20 Nev. 61.) It is always the first great object of the courts in interpreting statutes to place such construction upon them as will carry out the manifest purpose of the legislature, and this has been done in opposition to the very words of an act. (*Gibson* v. *Mason,* 5 Nev. 283, 311; *Abel* v. *Eggers,* 36 Nev. 372, 381.)

*A. L. Haight* and *Mack & Green,* for Respondent:

The general demurrer was properly overruled by the lower court, and its judgment should be affirmed. The only question involved is whether or not section 13 of "An act concerning public schools, and repealing certain acts in relation thereto," approved March 20, 1911 (Stats. 1911, 189, Rev. Laws, 3251), made an appropriation of moneys to be used as traveling expenses of deputy state superintendents. There are two assignments or specifications of error to the overruling of the demurrer, the first being that the court erred in finding that section 13 provided an appropriation for "traveling expenses, cost of transportation, and cost of living"; and, second, it is claimed that there is no allegation in the complaint that there was an unexhausted balance in the general fund of the state.

Inasmuch as the salary and expenses of the deputy school superintendents are payable from the "general fund," a specific appropriation would be a fruitless and abortive proceeding, unless intended to increase or decrease the amounts provided for these purposes by section 13; and, again, section 13 specifically provides that traveling and other expenses of deputy superintendents shall be payable out of the "general fund," but, if no fund were designated, the section would be deemed and construed as making an appropriation from the "general fund." (*State* v. *Eggers,* 29 Nev. 475.)

The claim that the complaint does not allege an unexhausted fund out of which the claim may be paid is without merit. The court will presume that there

were moneys in the "general fund" of the state, that being the fund out of which most all, if not all, appropriations are made. If there were no moneys in the "general fund" at the time the claim was presented to the state controller for his warrant, which was not a fact, it constituted a special and affirmative defense, which has not been pleaded. Moreover, the amended complaint expressly alleges "that there are sufficient moneys in the general fund of the treasury of the State of Nevada, not otherwise appropriated, to pay the same." This is a clear and concise allegation of the existence in the "general fund" of sufficient moneys to pay the claim, and must be held sufficient, at least on general demurrer. The complaint also clearly alleges that the claim was presented to the state controller.

The real question to be determined, and which the court is here asked by respondent to decide, is whether or not section 13 of the act of 1911 provides an appropriation for the payment of traveling expenses, cost of transportation and cost of living of deputy superintendents. It is unnecessary to go to the decisions of the courts of other states, as we find that this court has rendered the clearest exposition of the law involved in the case at bar that we are able to find in the books. Every question required to be determined in this case is decided in the case of *State ex rel. Davis* v. *Eggers*, 29 Nev. 469. This case is certainly the law of the state, having been decided by a unanimous court, and having been cited with approval. (*State ex rel. Fowler* v. *Eggers*, 33 Nev. 535; *State ex rel. Norcross* v. *Eggers*, 35 Nev. 250; *State ex rel. Birdzell v. Jorgensen*, 142 N. W. 457.)

By the Court, SANDERS, J.:

George E. McCracken brought his suit in the district court of the First judicial district of the State of Nevada, in and for the county of Ormsby, to recover from the defendant the sum of $417.78. His complaint, in substance, avers that the plaintiff was, and

ever since September 15, 1915, has been, a duly appointed, qualified, and acting deputy superintendent of public instruction, in and for supervision district No. 3 of the State of Nevada; that during the year 1916, in his capacity as said official, it became necessary that he advance, for and on account of the defendant, certain sums as traveling expenses; that the total amount of money so advanced during said year was the sum of $658.85; that claims for advances so made during the said year on account of said expenses, amounting in all to the sum of $373.23, have been audited and paid; that claims for advances so made during the said year on account of said expenses, amounting to the sum of $285.62, were presented to the board of examiners, audited and allowed by said board, but the state controller refused, and still refuses, to draw warrants therefor on the treasurer; that plaintiff has not received payment of said claims, or any part thereof. For a second cause of action the complaint alleges that during the year 1917 the plaintiff advanced for and on account of the defendant, for his traveling expenses, the sum of $76.07. For a third cause of action the complaint alleges that the plaintiff advanced for and on account of defendant, for his office expenses during the year 1917, the sum of $56.09.

Each cause of action was amended, as stipulated, by the insertion of this clause:

"That an appropriation for the payment of the expenses above mentioned was made by the legislature of the State of Nevada under and by virtue of section 13 of an act entitled 'An act concerning public schools and repealing certain acts relating thereto,' approved March 20, 1911, and that there are sufficient moneys in the general fund of the treasury of the State of Nevada, not otherwise appropriated, to pay the same."

The defendant interposed a general demurrer to the amended complaint, and for demurrer alleged that the said amended complaint does not state facts sufficient

to constitute a cause of action against this defendant, which was overruled by the district court. The defendant declined to plead further, whereupon a default was entered, and judgment rendered for the amount sued for. From the order overruling the demurrer, and from the judgment, defendant has appealed.

In 1911 the legislature enacted a complete revision of the school laws. (Stats. 1911, p. 189.)

Section 13 of the act (Rev. Laws, 3251) in part provides:

"All claims for the traveling expenses, including the cost of transportation and the cost of living, of each deputy superintendent of public instruction while absent from their places of residence, together with necessary office expenses, shall be paid from the general fund of the state, whenever such claims shall be allowed by the state board of examiners; *provided,* that not more than eight hundred dollars shall be paid from the general fund of the state in settlement of claims for such traveling expenses of any deputy superintendent of public instruction during any one year, and not more than three hundred and fifty dollars shall be paid from the general fund of the state in settlement of claims for such office expenses of any deputy superintendent of public instruction for any one year."

Article 4, section 19, of the constitution provides:

"No money shall be drawn from the treasury but in consequence of appropriations made by law."

This inhibition is supplemented by section 3 of an act defining the duties of the state controller (Stats. 1866, p. 96; Stats. 1915, p. 94), which reads in part as follows:

"He shall draw all warrants upon the treasury for money, and each warrant shall express, in the body thereof, the particular fund out of which the same is to be paid, the appropriation under which the same is drawn, and the nature of the service to be paid, and no warrant shall be drawn on the treasury, except there be an unexhausted specific appropriation, by law, to meet the same."

It appears that the legislature, at its session in 1911 (Stats. 1911, p. 78), and at each subsequent session up to the session of 1917 (Stats. 1913, p. 183; Stats. 1915, p. 227), by what is styled "general appropriation acts," reduced the maximum sum as stated in section 13 of the school law for the payment of the traveling and office expenses of deputy superintendents of public instruction to $1,000 for traveling expenses, and to $650 for office expenses, for the period of two years—the life of each act. The act of 1915 was an act entitled:

"An act making appropriations for the support of the civil government of the State of Nevada for the years 1915–1916."

Section 1 of the act provided that:

"The following sums [of money] are hereby appropriated for the purpose hereinafter expressed, and for the support of the government of the State of Nevada for the years 1915–1916."

Section 28 of said act provided:

"For actual traveling expenses of deputy superintendent of public instruction, district No. 3, $1,000.00."

"For office expenses of deputy superintendent of public instruction, district No. 3, $650.00."

We have thus endeavored to point out the statute law bearing upon and involved in the proper solution of the issues of law raised by the demurrer.

1. Before discussing the principal objection made to the complaint, we shall, *in limine*, advert to the first cause of action, whereby the respondent demands judgment for his traveling expenses incurred and advanced during the year 1916 in the performance of his official duties. In the case at hand we concede that the facts studiously alleged in the first cause of action show a statutory right to recover under section 13 of the general school law of 1911; but in view of the general appropriation act of 1915, which specifically appropriated the maximum sum of $1,000 of the general fund for the express purpose of paying the respondent's traveling expenses for the years 1915–1916, we are

impelled to take judicial notice that the facts stated in the first cause of action are not true. The act of 1915 was binding upon the parties for the period of its life—two years. The expenses for the year 1916 were incurred under it, limited by it, and the obligation of the state to pay was imposed by it. Just why respondent sought to recover under section 13 of the school law, which was manifestly superseded or suspended by the appropriation act of 1915, does not appear upon the face of the complaint. With nothing before us to support the facts alleged, other than the construction placed upon the statute by the pleader, we are impelled to hold that the first cause of action does not state facts sufficient to entitle the respondent to the relief demanded.

2. An entirely different question is presented by the respondent's second and third causes of action. This leads to a discussion of appellant's principal objection to the insufficiency of the facts stated in the complaint to constitute a cause of action. It is the contention of appellant that section 13 of the general school law of 1911 makes no appropriation for the payment of claims arising under it. We are not without judicial definition by our own court of what constitutes an appropriation in the sense of our constitution. The cases of *State ex rel. Abel* v. *Eggers,* 36 Nev. 372, 136 Pac. 100, *State ex rel. Davis* v. *Eggers,* 29 Nev. 469, 91 Pac. 819, 16 L. R. A. n. s. 630, and *State* v. *La Grave,* 23 Nev. 25, 41 Pac. 1075, 62 Am. St. Rep, 764, embrace a full and close discussion of the meaning of such an appropriation. We are impressed that the section in question was so framed as to conform to the definition of an appropriation, as declared by these cases. It specifically fixes the maximum amount set apart from the general fund for the payment of claims arising under it; it names the person; it designates the time; it specifies the fund, and prescribes the condition upon which warrants shall be drawn for the payment of said claims. We are of the opinion that the section, *ex proprio vigore,* makes an appropriation, and no further legislative act was

required to give it force. The fact that the legislature, at the same session and at subsequent sessions, by general appropriation acts, fixed and set apart a lesser maximum sum from which to pay the traveling and office expenses of respondent, does not show or indicate that the legislature construed section 13 of the school law to be merely a limitation upon it and succeeding legislatures above which an appropriation could not be made for the purposes named. Such would be to construe the act as being an organic law, not subject to repeal, amendment, or suspension by the same or any other legislature. The appropriation made by the general law is no more indefinite and uncertain than the appropriation made by general appropriation acts, which are conceded to be valid. The amount appropriated in one is no more specific than in the other. The exact amount of the expenses could not be ascertained or fixed by the legislature under either before they were incurred.

3. No particular form of words is necessary for the purpose of an appropriation, if the intention to appropriate is manifest. (*State* v. *La Grave, supra.*) This case quotes with approval this language:

"And such an appropriation may be prospective; that is, it may be made in one year, of the revenues to accrue in another or future years, the law being so framed as to address itself to such future revenues." (*Ristine* v. *State,* 20 Ind. 339.)

And in the case of *State ex rel. Davis* v. *Eggers, supra,* the court quotes with approval this language:

"It may also be a continuing or fixed appropriation, as well as one for a temporary purpose, or a limited period. The use of technical words in a statute making an appropriation is not necessary. There may be an appropriation of public moneys to a given purpose without in any manner designating the act as an appropriation." (*Campbell* v. *Board,* 115 Ind. 594, 18 N. E. 33.)

It is true the legislative branch of our state government has adopted the policy of making specific appro-

priations for carrying on the civil government by what
is known as a general appropriation bill. These bills
have by long usage come to be regarded by fiscal officers
as speaking the will of the legislature, and therefore
controlling upon them in the performance of their
duties. But it appears the legislature of 1917 made no
appropriation for the payment of respondent's traveling
and office expenses during the years 1917–1918. From
this failure or omission it is contended by the appellant
that it was the intention of the legislature to repeal or
suspend the appropriation made for these purposes by
the general school law of 1911. This court has ruled
adversely to this contention in the case of *State ex rel.
Abel* v. *Eggers, supra.* The constitution does not pro-
vide that the public funds shall be annually applied
under the direction of the legislature through general
appropriation acts. Nor is it necessary that all expendi-
tures for the carrying on of the civil government be
authorized by such acts. (*State ex rel. Davis* v. *Eggers,
supra.*) Section 13 of the general school law now stands
alone, unaffected by any appropriation bill or act, and
as we are of the opinion that it constitutes an appropri-
ation in the sense of our constitution for the payment
of the traveling and office expenses of the respondent,
we conclude that the respondent is entitled to judg-
ment for the amount of said expenses sued for in his
second and third causes of action. But as we are of
the opinion, as hereinabove stated, that the facts alleged
in respondent's first cause of action are not true, the
judgment appealed from will be modified, by reducing
the same to the sum of $132.16, and, as so modified, the
judgment is affirmed.

It is so ordered.


McCARRAN, C. J., dissenting:

I dissent.

Respondent in this case, plaintiff in the court below,
instituted the action for the recovery of $417.87, alleg-
ing the same to have been advanced by him pursuant

to his office as deputy superintendent of public instruction for the Third supervision district and in the course of his duties.

Respondent sets up three causes of action, the first of which involves money alleged to have been advanced during the year 1916, and the second and third involve money advanced during the year 1917. Each cause of action rests upon the claim of an appropriation made by section 13 of the school law (Rev. Laws, 3251), which is as follows:

"The compensation of each deputy superintendent of public instruction is hereby fixed at two thousand dollars per annum, and shall be paid out of the general fund of the state as the salaries of other state officers are paid. All claims for the traveling expenses, including the cost of transportation and cost of living, of each deputy superintendent of public instruction while absent from their places of residence, together with necessary office expenses, shall be paid from the general fund of the state, whenever such claim shall be allowed by the state board of examiners; *provided*, that not more than eight hundred dollars shall be paid from the general fund of the state in settlement of claims for such traveling expenses of any deputy superintendent of public instruction during any one year, and not more than three hundred and fifty dollars shall be paid from the general fund of the state in settlement of claims for such office expenses of any deputy superintendent of public instruction for any one year."

I shall deal with these causes of action separately, inasmuch as that which in my judgment may apply to the first cause of action is somewhat different to the application of law which may be made to the second and third. The amended complaint establishing the first cause of action alleges:

"That an appropriation for the payment of the expenses above mentioned was made by the legislature of the State of Nevada under and by virtue of section 13 of an act entitled 'An act concerning public schools,

and repealing certain acts relating thereto,' approved March 20, 1911, and that there are sufficient moneys in the general fund of the treasury of the State of Nevada, not otherwise appropriated, to pay the same."

The contention of respondent here, as in the court below, is that the proviso found in section 13 in itself constitutes an appropriation. It will be noted that the proviso is as follows:

"*Provided,* that not more than eight hundred dollars shall be paid from the general fund of the state in settlement of claims for such traveling expenses of any deputy superintendent of public instruction during any one year, and not more than three hundred and fifty dollars shall be paid from the general fund of the state in settlement of claims for such office expenses of any deputy superintendent of public instruction for any one year."

Respondent here relies upon the former decisions of this court to support his position, and claims that the language of this proviso in itself constitutes an appropriation. (*State* v. *La Grave,* 23 Nev. 25, 41 Pac. 1075, 62 Am. St. Rep. 764; *State ex rel. Davis* v. *Eggers,* 29 Nev. 469, 91 Pac. 819, 16 L. R. A. n. s. 630.) I may say here, parenthetically, that the position which I shall take as to the second and third causes of action might be taken with reference to the first cause of action, and thereby settle the entire question; but, as I have already stated, a somewhat different consideration may be given to the first cause of action, in view of legislation to which I shall refer.

Appellant, having challenged the complaint on the ground of insufficiency of the facts to constitute a cause of action, appealed from the order overruling the demurrer. It is contended that the demurrer constituted an admission of the truth of the facts set forth in the complaint, and that the court cannot go beyond the complaint to determine as to whether or not the facts alleged constitute a cause of action. As a general rule, the submission of a case on general demurrer

means that the facts stated in the pleadings are taken as true. In other words, a general demurrer as such admits the truth of the facts alleged in the pleadings. This general rule has its well-established exceptions, two of which are directly applicable to the matter here presented:

First—Those facts stated in the pleading which are necessary to allege are admitted by demurrer; hence, facts of which the court will take judicial notice, not being necessary allegations in a pleading, are not admitted by demurrer. An allegation in a pleading is not admitted by demurrer, if it is contrary to the facts of which judicial notice is taken. (*French* v. *Senate*, 146 Cal. 604, 80 Pac. 1031, 69 L. R. A. 556, 2 Ann. Cas. 756; *Goelet* v. *Cowdrey*, 1 Duer, N. Y. 132; *People* v. *Mahaney*, 13 Mich. 481.)

Second—The truth of an allegation setting forth a legal conclusion is not admitted by demurrer. (*First Nat. Bank of Albuquerque* v. *Lewinson*, 12 N. M. 147, 76 Pac. 288; Sutherland on Code Pleading, vol. 1, c. 10, *et seq.*)

Here in the averments of this amended complaint is an allegation of a legal conclusion. If, as is contended, this court were bound to accept this as a fact admitted, it would mean that the court was precluded from the investigation of other statutes bearing upon the same subject or the observation of other acts of coordinate branches of our state government directly affecting the legislative act here asserted as a fact. I deem it scarcely necessary to add citation to a rule of almost universal acceptation, that the courts of a state will take judicial notice of the statute of that jurisdiction. (*Schwerdtle* v. *Placer County*, 108 Cal. 589, 41 Pac. 448; *Bowen* v. *Missouri Pacific Ry. Co.*, 118 Mo. 541, 24 S. W. 436; *Holdridge* v. *Farmers & Mechanics Bank*, 16 Mich. 66; *In Re Division of Howard County*, 15 Kan. 194; *Madison Co. Comm.* v. *Burford*, 93 Ind. 383; *Lackey* v. *Richmond & L. Turnpike Road Co.*, 17 B. Mon. 43; *Pritchard* v. *Woodruff*, 36 Ark. 196; *Williams* v. *State*, 37 Ark 463.)

Courts are charged with knowledge of whatever is established by law. (*Mullan* v. *State,* 114 Cal. 581, 46 Pac. 670, 34 L. R. A. 262.) In many states statutes are found expressly designating the subjects of which courts will take judicial notice. However this may be, the principle had its inception in the very early stages of the common law, and indeed is traceable in the civil law. The principle had its inception in the idea that the administration of justice was carried on by the sovereign, and that which was within the knowledge of the sovereign should be and was presumed to be within the knowledge of the court. The more modern idea is expressed in the language of Mr. Greenleaf when he says:

"Courts will generally take notice of whatever ought to be generally known within the limits of their jurisdiction." (1 Greenleaf on Evidence, sec. 6.)

Again, that author says:

"Courts will also judicially recognize the political constitution or frame of their own government; its essential political agents or public officers, sharing in its regular administration; and its essential and regular political operations, powers, and action."

Judicial notice may be taken by courts of the accession of the chief executive of the nation or state; under what authority he acts; also, the convening and sitting of the legislative body (*Mills* v. *Green,* 159 U. S. 651, 16 Sup. Ct. 132, 40 L. Ed. 293) and its established and usual course of proceeding (Greenleaf on Evidence, vol. 1, sec. 6). The doings of the executive and legislative branches of our government are matters of which judicial knowledge is presumed. (*Prince* v. *Skillin,* 71 Me. 361, 36 Am. Rep. 325; *United States* v. *Turner,* 11 How. 663, 13 L. Ed. 857.) Legislative acts and official proceedings are matters of which the courts may and should take judicial cognizance. (*City of Topeka* v. *Tuttle,* 5 Kan. 311; *Southern Cotton Press & Mfg. Co.* v. *Bradley,* 52 Tex. 587; *French* v. *Senate,* 146 Cal. 604, 80 Pac. 1031, 69 L. R. A. 556, 2 Ann. Cas. 756.)

Under the rule generally accepted as governing matters of which courts will take judicial notice under the rules of pleading applicable thereto, I hold that it is our duty to take cognizance of other statutes and legislative acts bearing directly upon the statute (section 13, School Law; Rev. Laws, 3251), and the subject-matter thereof, upon which respondent here relies. Hence we may and should refer to the specific appropriation acts of the legislature of 1911 and subsequent legislatures, and also to the action of the legislature of 1917, as officially recorded in the legislative journals. The power to create offices other than those created by our constitution is in the legislature. That body has the power to fix and regulate the emoluments or compensation of each office so created, as well as to prescribe a limitation to the expense of such office chargeable to the state.

Referring, now, specifically to the first cause of action here alleged, and which looks to the expenditures of the office of the deputy superintendent of the Third supervision district for the years 1915 and 1916, let us concede for the time that section 13 of the school law (Rev. Laws, 3251) was, as contended, an appropriation sufficient for the purposes of this case. The very language of the proviso incorporated in the section conveys a sense of uncertainty; the phrase "not more than" is a comparative, which, when used as here, conveys the sense of an aggregate undefined, but within the limits fixed by the maximum named. The legislature of 1911 enacted the general school law, of which section 13 is a part. In the general appropriation act of 1911 the legislature appropriated for the traveling expenses of the Third supervision district for the years 1911 and 1912 the sum of $1,000. (Stats. 1911, p. 80.) The legislature of 1913 (Stats. 1913, p. 186) made a similar specific appropriation for the traveling expenses connected with that office; and the legislature of 1915 (Stats. 1915, p. 234) did the same.

The legislative body, having created in 1911 the office

of deputy superintendent of public instruction for the several supervision districts, had the right to limit the expense of such office chargeable to the state. Being an appointive office, it was within the power of the legislature to limit, fix, or prohibit the expenses chargeable to the state. If the aggregate of the expenses chargeable to the state were by the act which created the office left uncertain, it was within the power of the legislature to define this, thus to make it certain. To accomplish this certainty, to make the amount definite, no more direct way could have been pursued by the legislative branch than to specifically appropriate a given and definite sum equal to or less than the maximum named in the original act. If the proviso of section 13 of the school law stood alone, unaffected by subsequent legislation, some support might be found for the assumption that it was the legislative intent that it should constitute an appropriation to the extent of the maximum named; but when the very legislature that created the office of deputy superintendent and enacted the provisions of section 13 later by specific appropriation fixed the amount that should be paid by the state for expenses for the years 1911 and 1912, this was final, positive, definite; and the same applies to the specific appropriation of 1913 and 1915. This was the appropriation intended by the legislative body to be the full amount of the traveling expenses of the office chargeable to the state.

Was this appropriation of $1,000, made by the legislature of 1915 for the traveling expenses of the deputy superintendent of the Third supervision district for the years 1915 and 1916, exhausted when the claims of the respondent constituting the first cause of action were presented to the state controller? Our law requires that the state controller shall publish an annual report (Rev. Laws, 4156), and specifically prescribes what shall be set out in that report (Stats. 1915, p. 94). The annual report of the state controller for the year 1915 (page 25) shows that out of the $1,000 appropriated by the legislature of that year for the traveling expenses of the

deputy for the Third supervision district, $625.77 had been expended, and there remained $373.23 in the appropriation. The controller's report for the year 1916 shows that the entire appropriation had been expended. (Annual Report of State Controller for 1916, page 25.) This, too, is admitted by respondent's pleadings. The appropriation was exhausted when the claims which constitute the basis for respondent's first cause of action were presented to the state controller. My view of the law as to the traveling expenses sued for applies also to the items claimed for office expenses. The state has discharged its obligation to respondent. The specific appropriation having been exhausted, the state controller could not honor the claims of respondent.

The second and third causes of action in this case are based on claims for traveling expenses and office expenses for the year 1917. The legislature made no appropriation in the general appropriation act of the year 1917 for the traveling or office expenses of the deputy superintendents of public instruction. The contention of respondent as to his second and third causes of action rests on his position that the proviso in section 13 of the school law of 1911 was of itself an appropriation to the extent of $800 per annum for traveling expenses and $350 per annum for office expenses.

Did the legislature of 1911 intend this section of the school law to be an appropriation? The most that can be said as to the specific language of the section is that it named the fund out of which the traveling expenses and office expenses should be diverted, and named the maximum of that expense chargeable against the state for any one year. As I have already stated in my consideration of the first cause of action, the legislature, having created this office, had the power to limit the traveling expenses of the officer which might be chargeable against the state. Having the power to limit—and in my judgment the language of section 13 conveys no other idea than that the legislative intent was that that body alone should specify the amount—it follows

as a matter of course, and will, I apprehend, not be gainsaid, that it had the power to eliminate.

In determining as to whether this was an appropriation, we must look to the legislative intent, if such intent can be ascertained. The legislature that enacted section 13 of the general school law did not itself regard this section as constituting an appropriation, because in that very session (Stats. 1911, p. 80) it made a specific appropriation of a sum different from that named in section 13. Each succeeding legislature has made a specific appropriation for this purpose. (Stats. 1913, p. 186; Stats. 1915, p. 234.)

Courts in construing statutes may take into consideration the construction placed upon a particular statute by the legislature that enacted the same, if such be ascertainable; and in cases of this character the general appropriation act may be considered in connection with the section in question (*Converse* v. *United States,* 21 How. [62 U. S.] 463, 16 L. Ed. 192), and continued construction and application by those in authority or by those officially affected should not be overlooked. The respondent here, as well as those other officers of our school system, have made manifest their construction of this section of the school law. In each instance the specific appropriation made by the legislature in the general appropriation bill, and not section 13 of the school law, was relied upon.

The legislature of 1915 specifically appropriated $1,000 for traveling expenses for the deputy for the Third supervision district. This sum had been exhausted. (Annual Reports of the State Controller, *supra.*) We observe that a relief bill (Senate Bill No. 50) was introduced (Senate Journal 1917, page 83), by which it was proposed to have the legislature appropriate by way of relief to respondent the exact sum which constitutes the basis of respondent's first cause of action here. This the legislature refused to do. (Senate Journal 1917, page 153.) The courts are here asked by this proceeding to do that which the legislature

refused. Moreover, we are asked to now construe the provision of section 13 of the school law to be an appropriation in itself, when for years, and in each suceeeding session of our legislature since the passage of the act, that body has made specific appropriation. Moreover, the respondent here in his official capacity has been governed by the specific appropriation rather than by section 13 of the school law.

Legislative construction, or the application or construction placed upon a statute by administrative officers, is not binding upon a court. The power is vested in the judicial branch of the government to finally construe statutes; but in construing and interpreting statutes the motive of the lawmaking body may be looked for and ascertained in contemporaneous history and in contemporaneous and subsequent legislation upon cogent matters. (*Steamboat Co.* v. *Farmers Co.,* 18 N. J. Eq. 13; *State ex rel. New Orleans Pacific R. Co.* v. *Nicholls et al.,* 30 La. Ann. 980; *Edger* v. *Randolph Co. Comm.,* 70 Ind. 331.)

Consideration has always been given by courts to the construction given to a statute by the officers appointed to execute it, where such officers have acted under the law for a considerable length of time. (*Union Ins. Co.* v. *Hoge,* 21 How. [62 U. S.] 35, 16 L. Ed. 61; *Scanlan* v. *Childs,* 33 Wis. 662; *Westbrook* v. *Miller,* 56 Mich. 148, 22 N. W. 256.)

Basing my conclusion upon the foregoing reasoning, it is my judgment that the demurrer should have been sustained as to all causes of action. The prevailing opinion seems to be in accord with my views as to the respondent's first cause of action, and, if I understand it correctly, would reverse the lower court on its decision in overruling the demurrer as to this. The order of the prevailing opinion in effect sustains the general demurrer as to the first cause of action, and overrules the same as to the second and third causes. Following this, the prevailing opinion and order assumes to modify the judgment on the appeal brought to this court from

an order overruling a general demurrer. I am at a loss to know how, in view of the nature of this demurrer, this court can reconcile its action in this respect, in face of the universal rule of pleading which holds that, when a complaint sets up more than one cause of action, a general demurrer will not lie, if any one of the causes is well pleaded, and in such case the demurrer, although good as to one of the causes, must be overruled. (*Palmer* v. *Breed*, 5 Ariz. 16, 43 Pac. 219; *Blakeney* v. *Ferguson*, 18 Ark. 347; *Fleming* v. *Albeck*, 67 Cal. 226, 7 Pac. 659; *Stacey* v. *Baker*, 1 Scam. [2 Ill.] 417; *Bayless* v. *Glenn*, 72 Ind. 5; *Jarvis* v. *Worick*, 10 Iowa, 29; *Missouri Pac. Ry. Co.* v. *McLiney*, 32 Mo. App. 166; *Alexander* v. *Thacker*, 30 Neb. 614, 46 N. W. 825; *Hudson* v. *Winslow*, 35 N. J. Law, 445; *Martin* v. *Williams*, 13 Johns. N. Y. 264; *Kent* v. *Bierce*, 6 Ohio, 336; *Spicer* v. *Giselman*, 15 Ohio, 338; *Shroyer* v. *Richmond*, 16 Ohio St. 465; *Ketchum* v. *State*, 2 Or. 103; *Simpson* v. *Prather*, 5 Or. 86; *Carson* v. *Cock*, 50 Tex. 325; *Standiford* v. *Goudy*, 6 W. Va. 364; *Lockwood* v. *Rogers*, 2 Pin. [Wis.] 90; *U. S.* v. *Girault*, 11 How. 22, 13 L. Ed. 587; *Brown* v. *Duchesne*, 2 Curt. 97, Fed. Cas. No. 2003; *Vermont* v. *Society*, 2 Paine, 545, Fed. Cas. No. 16,920; Bliss on Code Pleading; Maxwell on Code Pleading, 375; Phillips on Code Pleading, sec. 294; Sutherland on Code Pleading.)

The question to be passed upon here is the action of the lower court in overruling a general demurrer to a complaint setting up several causes of action. Was the general demurrer good as to all of these causes of action? If it was, then we should reverse the ruling of the lower court. Was any one of the causes of action good as against the general demurrer? If we determine this question in the affirmative, then we must sustain the ruling made below. But to hold, as does the prevailing opinion, that the first cause of action was defective as against the general demurrer and the second was not, and then to sustain the lower court as to its order overruling the general demurrer, and yet declare the

demurrer good as to the first cause of action, and then to sustain the lower court as to its order overruling the general demurrer and at the same time modify the money judgment entered by that court, by striking out the amount of the first cause of action, because the same was subject to the general demurrer—well, if precedent is the parent of law, surely this is the whole family.