## JOSEPH HISS *vs.* WILLIAM S. BARTLETT.

The house of representatives of Massachusetts have the power to expel a member; and the reasons for expulsion, and the question whether a member was duly heard before being expelled, cannot be inquired into by this court in determining whether he was privileged, as a member, from arrest on mesne process.

HABEAS CORPUS, issued by the chief justice, on the 18th of May 1855, on the petition of Joseph Hiss, representing that he was a member of the house of representatives of this common-wealth, and as such exempt from arrest on mesne process, while going unto, returning from or attending the general court; and that, while attending the general court as such member on the 17th of May, he was arrested and committed to the jail for this county, and there detained by William S. Bartlett, the keeper thereof, by virtue of a writ of capias and attachment sued out of the court of common pleas, supported by the affidavit required by law.

The creditors, at whose suit the arrest was made, having had notice to appear, under Rev. Sts. *c.* 111, § 19, filed an answer, admitting the arrest, and denying that the petitioner was a member of the house of representatives.

At the hearing before the chief justice, it was proved by copies of the journals and files of the house of representatives, certified by their clerk, pursuant to *St.* 1844, *c.* 153, that the petitioner was duly elected, and qualified and acted, as a member of the house for 1855, and that a committee, appointed by the house to investigate his conduct on a visit to Lowell as one of a committee of the house, recommended his expulsion from the house, on the ground that " his conduct upon the committee at Lowell was highly improper and disgraceful, both to himself and to this

body, of which he is a member;" and that the house, without giving him an opportunity to be fully heard by counsel, on the 10th of May resolved, "for the reasons set forth in the report of the committee," that he be expelled from the house.

The case was argued before the chief justice.

*B. F. Butler & B. Dean,* for the petitioner. The proceedings, relied on to show that the petitioner had been deprived of the office of member of the house of representatives, are insufficient.

The house have no power given by the Constitution of the Commonwealth to expel a member. (1.) The power given to them by *c.* 1, § 3, art. 10, to punish by imprisonment, for disorderly conduct, " Every person, not a member," excludes any such implied authority. (2.) This section only makes it the "judge of the returns, elections and qualifications of its own members, as pointed out in the constitution;" and those qualifications are that he shall have been, for one year next preceding his election, an inhabitant of the town ; and shall not have been convicted, in due course of law, of bribery and corruption, in obtaining his election. *c.* 1, § 3, art. 3 ; *c.* 6, art. 2 ; amendments, art. 13. (3.) The power of expulsion necessarily includes a power of trial ; and the house have only power to " try and determine cases where their rights and privileges are concerned, and which by the Constitution they have authority to try and determine." *c.* 1, § 3, art. 11. (4.) They have not this power, by virtue of the authority conferred upon them by *c.* 1, § 3, art. 10, to make rules and orders ; for no rule or order for expelling a member had ever been made. (5.) Such power would contravene art. 12 of the Declaration of Rights, by taking away the privileges of a subject without the judgment of his peers, or the law of the land ; and also art. 24, by punishing an act which had not been declared a crime by any preceding law. (6.) It cannot be derived from parliamentary common law ; for no common law exists in this commonwealth, save that of " the courts of law," adopted by the Constitution, *c.* 6, art. 6. Parliamentary law is other and different from the common law of the courts, and is peculiar to itself ; it is *lex et consuetudo parliamenti.* 4 Inst. 16. 1 Bl. Com. 161. May's Law of Parliament,

(2d· ed.) 59.   2 Hatsell's Prec. (3d ed.) 75, *note.*   Yet even by this law, as best interpreted and understood, the House of Commons of England do not claim to exercise this power, but, in the case of John Wilkes, solemnly voted it to be "subversive of the rights of the whole body of electors of this kingdom." May's Law of Parliament, 54.   1 Bl. Com. (1st ed.) 163. And the power can hardly have been omitted by accident in our constitution, framed during the controversy in the case of Wilkes, by men who took the side of constitutional liberty.   In the constitutions of the United States, and of each state adopted since 1783, (with the single exception of that of New Hampshire, adopted in 1784, and modified in 1792,) this power has been expressly given, in a more or less restricted manner, but to be exercised in almost every instance, by two thirds of all the members elected, and never a second time for the same cause.

The constitutional remedy for maladministration or misconduct of a member is, as in the case of " any officer of the Commonwealth," by impeachment by the house, and trial by the senate under oath.   *c.* 1, § 2, art. 8; § 3, art. 6.   A representative is an "officer."   *c.* 6, arts. 1, 2; amendments, art. 8.   If he is not an officer, and as such entitled to be tried by the senate, he can be pardoned by the governor; *c.* 2, § 1, art. 8; which would be an anomaly never intended by the framers of the Constitution.

But if the house have the power of expulsion, it can only be as a power of selfprotection, inherent in every assembly, and must be exercised in framing rules and orders, declaring what misconduct shall be liable to such punishment; and this has not been done.   Besides; being derived from necessity, it can only be exercised where and while that necessity exists; but the journal of the house shows that this expulsion was voted for alleged misconduct out of the town where the legislature was in session, and in no way interfering with the proceedings of the house; and was in the nature of a punishment for previous misconduct, rather than of a prevention and staying of an existing evil or disorder.

If the power exists, it was improperly exercised in this case;

for the journal shows that the accused had no opportunity of defending himself against the accusation, as secured to him by art. 12 of the Declaration of Rights. And the attempt to punish him is a usurpation of judicial power by the legislature, in contravention of art. 13.

If it be suggested that, the power of expulsion being granted, the exercise of it is one of the privileges of the house, and cannot be reëxamined by the court in this process, we reply, 1st. That doctrine, as applied to parliamentary law, is confined to commitments for contempt, and does not extend to cases where the house has exceeded its jurisdiction, as in the case of any other superior court committing for contempt. *Stockdale* v. *Hansard*, 7 Car. & P. 731. *Burdett* v. *Abbot*, 14 East, 1. 2d. Here is no question of privilege; but a case between party and party, affecting personal liberty. 3d. Even if it were a question of privilege, yet, in a matter affecting personal liberty, parliamentary law is not in force in this commonwealth, (1.) Because not expressly recognized; (2.) Because overridden by the Declaration of Rights, art. 11, which declares that " every subject ought to find a certain remedy, by having recourse to the laws, for all injuries or wrongs which he may receive in his person, property or character."

*J. H. Buckingham*, for the respondent.

The chief justice, on the 23d of May, delivered the following opinion, in which Justices Metcalf and Bigelow concurred.

SHAW, C. J. This case arises upon the privilege of a representative, to be exempted from arrest on mesne process, going to, returning from or attending the general court. Const. ol Mass. *c.* 1, § 3, art. 10.

Can this be inquired into by *habeas corpus?* I think it can. It is a question of personal privilege, not of the privilege of the house. If it were, it might be more questionable. *Wilkes's case*, 19 Howell's State Trials, 981. *Holiday* v. *Pitt*, 2 Stra. 985.

The question is whether the house of representatives have the power to expel a member. The only clause in the constitution which can have a bearing on this question is as follows : " The house of representatives shall be judge of the returns,

elections and qualifications of its own members, as pointed out in the constitution; shall choose their own speaker, appoint their own officers, and settle the rules and orders of proceeding in their own house. They shall have authority to punish by imprisonment every person, not a member, who shall be guilty of disrespect to the house, by any disorderly or contemptuous behavior in its presence; or who, in the town where the general court is sitting, and during the time of its sitting, shall threaten harm to the body or estate of any of its members, for any thing said or done in the house; or who shall assault any of them therefor; or who shall assault or arrest any witness or other person ordered to attend the house, in his way in going or returning; or who shall rescue any person arrested by the order of the house." *c.* 1, § 3, art. 10. The authority to be " judge of the returns, elections and qualifications of its own members," does not limit their power; they are judges in other respects, in all respects.

They " shall settle the rules and orders of proceeding." It is said they had made no rule on the subject previously. I doubt whether that is necessary. They cannot enlarge their own powers by a rule. Why may they not make a particular rule, when the exigency arises? The more obvious purpose of this clause was, no doubt, to give an authority to make general rules. But a case may arise, unforeseen, for which no rule had been previously prescribed. I am rather inclined to think that this clause gives the power.

But if not, the omission of an authority to punish members, when that of punishing persons, not members, is so distinctly given, may well have been made because their implied power over their own members was full and complete, though an express grant of power was necessary, in regard to persons not members. The maxim, *expressio unius exclusio est alterius,* does not apply except where the two cases are alike.

There is a marked difference between the power of punishment and the power of expulsion. If not punishment, then the twelfth and twenty-fourth articles of the Declaration of Rights, as to trial by peers, and opportunity to defend, and the

injustice of punishing acts not declared crimes by preceding laws, do not apply. The power to expel implies the power to try; and if, by the Constitution, they have the power to expel, the power to try is expressly given them by *c.* 1, § 3, art. 11.

There is nothing to show that the framers of the constitution intended to withhold this power. It may have been given expressly in other states, either *ex majori cautela,* or for the purpose of limiting it, by requiring a vote of more than a majority.

It is suggested that the true remedy is by impeachment. But that form of proceeding has never been applied to members of the legislature; and would be slow, laborious and expensive, and inadequate to the object sought to be attained. Impeachment lies only for purposes of punishment, by deprivation of office, and disqualification to hold office, leaving the offender still liable to indictment, if the offence be indictable.

The power of expulsion is a necessary and incidental power, to enable the house to perform its high functions, and is necessary to the safety of the State. It is a power of protection. A member may be physically, mentally or morally, wholly unfit; he may be afflicted with a contagious disease, or insane, or noisy, violent and disorderly, or in the habit of using profane, obscene and abusive language. It is necessary to put extreme cases, to test a principle.

If the power exists, the house must necessarily be the sole judge of the exigency which may justify and require its exercise.

As to the law and custom of parliament, the authorities cited clearly show that the jurisdiction to commit, and also to expel, has long been recognized, not only in parliament, but in the courts of law, for the purposes of protection and punishment. I here confine myself strictly to the law of personal privilege from arrest. There has been much debate upon abuse of power, and excess of claim of privilege; but the power to commit or expel is uniformly admitted. The whole subject of privilege is much discussed in *Thompson's case,* 8 Howell's State Trials, 1, *& note.* Formerly it required a writ of privilege to discharge from arrest; but the practice now is to discharge on motion

*Holiday* v. *Pitt*, 2 Stra. 985. *Crosby's case*, 19 Howell's State Trials, 1150.

But to look at the more recent cases upon the question of jurisdiction, some of which were cited by the counsel for the prisoner. The case of *Burdett* v. *Abbot*, 14 East, 1, was an action of trespass by Sir Francis Burdett, a member of the house of commons, against the speaker of the house, for breaking and entering his dwelling-house, and carrying him to the tower. The speaker justified under the order of the house for the commitment of the plaintiff for contempt, for libels published by him injurious to the house; and it was held a good justification. An elaborate judgment was given by Lord Ellenborough, fully recognizing the power of the house of commons to commit one of its own members for breach of its privilege by publishing libels. This decision was affirmed on error in the exchequer chamber. 4 Taunt. 401.

The next is the well known case of *Stockdale* v. *Hansard*, which led to a sharp contest between the house of commons and the king's courts. 7 Car. & P. 731. 9 Ad. & El. 1. 11 Ad. & El. 253, 273, 297. The controversy was ultimately settled in 1840, by *St.* 3 & 4 Vict. *c.* 9. The question was, whether the publication of matter, which would otherwise be libellous against an individual, could be justified under an order of the house of commons; and the courts of law held it no justification. That was a civil action. Many of the remarks of the judges intimate what are the privileges of the house of commons. Coleridge, J. said : " No one, in the least decree acquainted with the constitution of the country, will doubt that in one sense the house is alone to judge of its own privileges—that in the case of a recognized privilege the house alone can judge whether it has been infringed, and how the breach is to be punished." 9 Ad. & El. 218.

If the house of commons have the power to commit, it appears to me, *a fortiori*, that they have the power to expel.

But it is suggested that, although the Constitution, *c.* 6, art. 6, provides that all the laws, which have heretofore been adopted, used and approved, and usually practised on in the courts of law,

shall still remain in full force, until altered or repealed by the legislature ; this does not extend to the laws and customs of parliament. This conclusion may perhaps admit of some doubt.

For a long time, it was maintained by those who favored privilege and prerogative, that these were not inquirable into, in the common law courts ; and the great struggle in modern times has been to bring these privileges within the cognizance of courts of law, especially when occasion arises to inquire into them collaterally.

But there is another consideration, which seems to render it proper to look into the law and practice of parliament, to some extent. I am strongly inclined to believe, as above intimated, that the power to commit and to expel its members was not given to the house and senate, respectively, because it was regarded as inherent, incidental and necessary, and must exist in every aggregate and deliberative body, in order to the exercise of its functions, and because without it such body would be powerless to accomplish the purposes of its constitution ; and therefore any attempt to express or define it would impair, rather than strengthen it. This being so, the practice and usage of other legislative bodies, exercising the same functions, under similar exigencies ; and the reasons and grounds, existing in the nature of things, upon which their rules and practice have been founded ; may serve as an example and as some guide to the adoption of good rules, when the exigencies arise under our constitution.

But independently of parliamentary custom and usages, our legislative houses have the power to protect themselves, by the punishment and expulsion of a member.

It is urged that this court will inquire whether the petitioner has been tried. But if the house have the jurisdiction for any cause to expel, and a court of justice finds that they have in fact expelled, I think we are bound to say, that when he was arrested, he was not a member of the house of representatives, and his privilege from arrest was at an end. *Prisoner remanded.*