[Sac. No. 1395. In Bank.—April 28, 1905.]

FRANK FRENCH, ELI WRIGHT, E. J. EMMONS, and HARRY BUNKERS, Petitioners, v. SENATE OF STATE OF CALIFORNIA (Thirty-Sixth Session), Respondent.

MANDAMUS—EXPULSION FROM STATE SENATE—CHARGE OF BRIBERY— DEMURRER TO PETITION—JURISDICTION.—A petition by former members of the state senate, who were expelled therefrom on a charge of bribery, for a writ of mandate to compel the senate to reinstate them, for alleged expulsion without a hearing, or trial, or opportunity for defense, and without conviction of crime, states no case within the jurisdiction of this court, and a general demurrer thereto was properly sustained and the writ denied.

ID.—EXCLUSIVE POWER OF SENATE—ABSENCE OF JUDICIAL POWER.—The power conferred upon the senate by the constitution, to determine the rule of its proceeding and, with the concurrence of two thirds of all the members elected, to expel a member, is exclusive; and the judicial department has no power to revise even the most arbitrary and unfair action of the legislative department, taken in pursuance of the power committed exclusively thereto by the constitution.

ID.—MANDAMUS INEFFECTIVE—ADJOURNMENT OF SENATE—NEW BODY.— This court has no power or means to carry into effect a writ of mandate to compel the restoration of the petitioners to the senate from which they were expelled, which has adjourned *sine die.* The next senate will be a different body from that now supposed to be before the court, and this court has no power over it.

ID.—FACTS JUDICIALLY NOTICED—CONTRARY ALLEGATIONS NOT ADMITTED BY DEMURRER.—Allegations of the petition, made contrary to facts judicially noticed by the court, are not admitted by the demurrer.

ID.—JUDICIAL NOTICE OF PROCEEDINGS—INVESTIGATION — PRESUMPTION OF NOTICE AND HEARING.—The court takes judicial notice of the proceedings had in the senate, and entered upon its journal, by which petitioners were expelled, showing that charges were preferred against them and referred to a committee for investigation, which, after investigation, reported to the senate, finding that the charges were true, and recommending expulsion, which report was acted upon by the senate. In the absence of a contrary allegation, it must be presumed that petitioners had notice of these proceedings, and were allowed to participate therein.

ID.—POWER OF SENATE TO CONTROL PROCEDURE.—The senate has power to adopt any procedure, and to change it at any time without notice. There is no constitutional provision giving petitioners the right to have a trial and opportunity to be heard in the senate other than that which they have received.

ID.—DEPRIVATION OF OFFICE — DUE PROCESS OF LAW — FOURTEENTH
AMENDMENT.—The senate having expelled the petitioners in the
mode prescribed by the constitution, their action is not a depriva-
tion of office without due process of law, within the meaning of the
fourteenth amendment to the federal constitution, which does not
affect the case. The sovereign power which created the office can
prescribe the terms upon which it is to be held and delegate the
power of removal.

ID.—CONSTRUCTION OF CONSTITUTION—DISFRANCHISEMENT UPON CONVIC-
TION—POWER OF EXPULSION—BILL OF ATTAINDER.—The provision
for the disfranchisement of a member upon conviction for crime,
in section 35 of article IV of the constitution, has no effect upon
the power to expel members conferred by section 9 of the same
article; nor does expulsion thereunder operate as a bill of attain-
der in violation of the state or federal constitution.

APPLICATION for Writ of Mandate to the State Senate.

The facts are stated in the opinion of the court.

George D. Collins, H. V. Morehouse, J. E. Alexander, F.
Jacobs, and William F. James, for Petitioners.

U. S. Webb, Attorney-General, for Respondent.

SHAW, J.—This is an original proceeding in *mandamus*
to compel the senate of the state of California to admit the
petitioners as members thereof. The case was submitted to
this court upon a general demurrer to the petition and the
writ denied.

The petitioners were duly elected senators of the state from
the respective districts which they represent, and each duly
qualified and acted as a member of the senate at the thirty-
sixth regular session until the twenty-seventh day of Febru-
ary, 1905, when they were by the senate expelled therefrom
for malfeasance in office, consisting of taking a bribe to influ-
ence their conduct as senators. Since then they have not been
allowed to sit as members of the senate nor to participate in
its proceedings. It is alleged in the petition that in the pro-
ceedings expelling the petitioners the senate did not give them
a hearing, nor afford them a trial upon the charges made, nor
permit them to make any defense thereto; that the charges of
bribery upon which they were expelled are false, and that
neither of them has been convicted of such crime.

Even if we should give these allegations their fullest force in favor of the pleader, they do not make a case justifying the interposition of this court. Under our form of government the judicial department has no power to revise even the most arbitrary and unfair action of the legislative department, or of either house thereof, taken in pursuance of the power committed exclusively to that department by the constitution. It has been held by high authority that, even in the absence of an express provision conferring the power, every legislative body in which is vested the general legislative power of the state, has the implied power to expel a member for any cause which it may deem sufficient. In *Hiss* v. *Bartlett*, 69 Mass. 473,[1] the supreme court of Massachusetts says in substance that this power is inherent in every legislative body; that it is necessary to enable the body "to perform its high functions, and is necessary to the safety of the state"; that it is a power of self-protection, and that the legislative body "must necessarily be the sole judge of the exigency which may justify and require its exercise." In this state the power does not depend on implication. It is expressly given. Or, as the power would exist without the express grant, perhaps it is more accurate to say that it is expressly recognized and limited. The constitution provides that the senate "shall determine the rule of its proceeding, and may, with the concurrence of two thirds of all the members elected, expel a member." (Const., art. IV, sec. 9.) If this provision were omitted, and there were no other constitutional limitations on the power, the power would nevertheless exist and could be exercised by a majority. The only effect of the provision is to make the concurrence of two thirds of the members elected necessary to its exercise. In all other respects it is absolute. The legislature is a co-ordinate department of the state government. By article III of the constitution it is provided that one department of the state shall not exercise the functions of either of the other departments except as in that instrument expressly directed and permitted. There is no provision authorizing courts to control, direct, supervise, or forbid, the exercise by either house of the power to expel a member. These powers are functions of the legislative department, and therefore in the exercise of the power thus committed to it the senate is

[1] 63 Am. Dec. 768, and note.

supreme.  An attempt by this court to direct or control the
legislature, or either house thereof, in the exercise of the
power, would be an attempt to exercise legislative functions,
which it is expressly forbidden to do.

Even if the court should attempt to usurp this legislative
function, there is no means whereby it could carry its judg-
ment into effect and give the relief demanded.  The thirty-
sixth session of the legislature has adjourned *sine die;* it is a
thing past, and cannot be reconvened upon the mandate of
the judicial power.  (Const., art. III.)  The senate could not
reinstate the petitioners as members of that session except
when lawfully in session.  Nor can the body which composed
the thirty-sixth session be again called together except in
special session and at the behest of the governor.  (Const.,
art. IV, sec. 2; art. V, sec. 9.)  The next regular session of the
senate will be composed of different persons and will be a
different body from that now supposed to be before the court.
The court is without power to issue its final process against a
body not lawfully served with its original process and which
has not submitted itself to its jurisdiction.  Moreover, before
the next session convenes, the terms of all the petitioners ex-
cept Wright will have expired.  The court cannot issue any
effective mandate to reinstate the petitioners as members of
the senate.

We think it is proper to say further, out of respect to a
co-ordinate department of the government, that, notwith-
standing the arbitrary action apparently charged against the
senate by the language of the petition, we cannot give the
statements therein contained their full force.  Ordinarily when
a case is submitted on a demurrer all the facts stated in the
pleadings demurred to are taken as true.  To this rule there
are some exceptions, one of which is important here.  Only
those facts are admitted by a demurrer which it is necessary
to allege in the pleading.  It is not necessary to allege facts
of which the court will take judicial notice.  Such facts will
be considered by the court, although not pleaded.  (12 Ency. of
Plead. & Prac., 1; 1 Chitty on Pleading, 215, 217, 218; *People*
v. *Mehany,* 13 Mich. 481; *Mullan* v. *State,* 114 Cal. 581; Bliss
on Code Pleading, 177, 194.)  Those allegations of a pleading
which are not necessary, and which are contrary to the facts
of which judicial notice is taken, are not admitted by a de-

murrer, but are to be treated as a nullity. (12 Ency. of Plead. & Prac., 1; 1 Chitty on Pleading, 215; *Mullan* v. *State,* 114 Cal. 581; *Ohm* v. *San Francisco,* 92 Cal. 449.) The courts take judicial notice of the public and private official acts of the legislative department of the state. (Code Civ. Proc., sec. 1875, subd. 2; *Mullan* v. *State,* 114 Cal. 581; *Davis* v. *Whidden,* 117 Cal. 623.) Among these official acts are included the proceedings by which the petitioners were expelled and which are entered upon the journal of the senate. We are therefore bound to take notice that charges were preferred against the petitioners in the senate and were referred by it to a committee for investigation; that the committee reported that it had made the investigation and that the charges were true, and recommended that the petitioners be expelled; that this report was taken up and considered by the senate; that the petitioners, being then members, had upon such consideration an opportunity to present, or have presented, arguments in their behalf, and that the resolution expelling them was regularly offered and adopted by the senate. There being no direct allegation to the contrary, we must presume that the petitioners had notice of these proceedings, and that they were allowed as members to participate therein. In view of these facts we cannot consider the allegations of the petition as imputing to the senate the arbitrary and unfair treatment of the petitioners which might be inferred from the language used, but will rather consider them as a statement of the conclusion of the pleaders that the proceedings taken, of which we take judicial notice, did not constitute a trial or hearing, and did not give them the opportunity to be heard in their own behalf which they believe they were entitled to have.

There is no averment that the manner of the proceeding was contrary to the rules established. And even if it were as abrupt as the interpretation of the pleading most favorable to the petitioners would imply, the matter would be immaterial. The senate has power to adopt any procedure and to change it at any time and without notice. It cannot tie its own hands by establishing rules which, as a matter of power purely, it cannot at any time change and disregard. Its action in any given case is the only criterion by which to determine the rule of proceeding adopted for that case.

There is no constitutional provision giving to the petition-

ers the right to have a trial and opportunity to be heard upon the charges made against them in the senate other than that which they have received.

The fourteenth amendment to the constitution of the United States does not affect the case, nor have its provisions been violated by the action of the senate. While it is true that, so far as private persons are concerned, the right to hold a public office duly conferred upon an individual has many of the attributes of private property, and is protected by the law of the land, yet, as between the office-holder and the sovereign power, such right is not violated when the proper governmental authority, acting in pursuance of a power expressly given to it by the fundamental law, has removed such person from the office. (*Matter of Carter*, 141 Cal. 319.) The sovereign power which created the office can also fix the terms upon which it is held and can delegate the power of removal. The title is held subject to the conditions thus imposed. The relations between the body politic and its officers are not in this particular essentially different from those existing between a private person and his servants. Although there may be a difference as to the liability for damages for a dismissal without cause, the right or power to dismiss always exists. The senate having expelled the petitioners in the manner prescribed by the constitution, in the exercise of the power therein given, it is not true that they have been deprived of the right to the office without due process of law.

With respect to the possible abuse of such power the case is analogous to that of the President of the United States with respect to officers of the United States subject to arbitrary removal by him. In regard to this the supreme court of the United States says that the only restraint upon the abuse of the power "must consist in the responsibility of the president, under his oath of office, to act as shall be for the general benefit and welfare." (*Shurtleff* v. *United States*, 189 U. S. 317.) The same is true of the power of the senate here under consideration. The oath of each individual member of the senate, and his duty under it to act conscientiously for the general good, is the only safeguard to the fellow-members against an unjust and causeless expulsion. This is the only practical rule that can be adopted as to those unrestricted governmental powers which are necessary to the exercise of governmental

CXLVI. Cal.—39

functions, and which must be lodged somewhere. Each department of the state is necessarily vested with some power which is beyond the supervision of any other department, and in such cases the only protection against abuse is the conscience of the individual in whom the power is vested.

The decisions holding that where a power is given to remove an officer "for cause" without requiring any previous notice or any hearing, such notice must nevertheless be given, and a hearing had, have been disapproved in this state. (*Matter of Carter,* 141 Cal. 319.) But, in any event, they clearly have no application to the present case, where the power to remove is, as we have seen, inherent and necessary to the exercise of the functions of the body possessing it, and are given without limitation or restriction.

It is claimed that the power to expel for bribery is, by section 35 of article IV, limited to those cases in which the member has been convicted of the crime defined in that section. The section provides that any member of the legislature who is influenced in his official action by any reward or promise thereof is guilty of a felony, and that upon conviction he shall be forever disqualified from holding any office or public trust. It is obvious that this section was not intended to have any effect whatever upon the power to expel members of the legislature given by section 9 of the same article. The two provisions are entirely independent and are made for different objects and purposes. The power to expel is given to enable the legislative body to protect itself against participation in its proceedings by persons whom it judges unworthy to be members thereof, and affects only the rights of such persons to continue to act as members. The provision of section 35 defines a certain crime and prescribes the effect of a judgment of conviction thereof upon the subsequent *status* as a citizen of the person found guilty. A resolution of the senate expelling a member, whether for bribery or for some other offense, or improper conduct, is not the equivalent of the conviction of the person of the crime set forth in the charges against him.

The proposition that a resolution or other action of the senate resulting in the expulsion of a member is in substance a bill of attainder and, therefore, a violation of section 16 of article I of the state constitution, and of section 10 of article I of the constitution of the United States, is scarcely worthy

of notice. The charges upon which a member is expelled may or may not constitute a charge of crime, but the resolution expelling him has not the force of law, and it cannot, by any stretch of construction, be denominated a bill of attainder. At common law "a bill of attainder was a legislative conviction for an alleged crime, followed by a prescribed punishment therefor, with judgment of death." And even where a milder punishment was inflicted its effect was an extinction of civil and political rights and capacities. (Cooley on Constitutional Limitations, 7th ed., 368.) The resolution of expulsion has no effect upon the rights of the member expelled further than to terminate his right to sit as a member of the legislative body, and it bears no just resemblance to a bill of attainder.

We find no ground upon which the application of the petitioners can be supported, and we are of the opinion that the writ was properly denied.

Angellotti, J., Van Dyke, J., Henshaw, J., Beatty, C. J., and Lorigan, J., concurred.