STATE of Missouri on the Information of John C. DANFORTH, Petitioner,

v.

J. B. "Jet" BANKS, Respondent.

No. 54606.

Supreme Court of Missouri,
En Banc.

April 24, 1970.

Rehearing Denied June 8, 1970.

John C. Danforth, Atty. Gen., Alfred C. Sikes, D. Brook Bartlett, Asst. Attys. Gen., Jefferson City, for petitioner.

Joseph L. Walsh, St. Louis, for respondent.

MORGAN, Judge.

In this original proceeding, the Attorney General of Missouri, herein referred to as the petitioner, filed an information in the nature of quo warranto seeking a judgment of this court that J. B. "Jet" Banks, respondent, be ousted from the office of State Representative for the 54th Legislative District of Missouri. In addition to filing his return, respondent filed a motion to dismiss the information on the basis that this court lacked jurisdiction of the subject matter. The motion was ordered taken with the case, and a special commissioner was appointed to hear evidence and report his findings and conclusions. His report has now been filed.

Factually, it is agreed that respondent at the General Election held November 5, 1968, was a candidate for the State House of Representatives from the 54th Legislative District, was certified by the Secretary of State as having been elected, was given the oath of office and is presently serving as the legislator for said district. It was further stipulated that said district was located wholly within the City of St. Louis, and that 1615 Bredell Avenue is located in Richmond Heights, Missouri. Petitioner alleges that respondent has resided at the latter address, which is located within the 40th Legislative District, for many years and has never resided in the district from which he was elected. After an evidentiary hearing, the commissioner reached the same conclusion.

Initially, we must consider respondent's challenge to the jurisdiction of this court. This contention is premised on those constitutional provisions (Constitution of Missouri 1945) which provide that each house of the General Assembly shall be the sole judge of the qualifications of its own members. Relevant constitutional sections are, in part, as follows:

Art. III, Sec. 4. Qualifications of representatives.—Each representative shall be twenty-four years of age, and next before the day of his election shall have been a qualified voter for two years and a resident of the county or district which he is chosen to represent for one year, * * *.

Art. III, Sec. 13. Vacation of office by removal of residence—If any senator or representative remove his residence from the district or county for which he was

elected, his office shall thereby be vacated.

Art. III, Sec. 18. * * * jurisdiction to determine membership * * *.—Each house shall appoint its own officers; shall be sole judge of the qualifications, election and returns of its own members; * * * with the concurrence of two-thirds of all members elect, may expel a member; * * *.

■ This court does have jurisdiction by virtue of Art. V, Sec. 4, V.A.M.S., which provides, "The supreme court * * * may issue and determine original remedial writs." The case as submitted calls for construction of the constitution which requires the performance of perhaps our most important function. In so doing, we must resolve whether or not a justiciable issue is presented. In this task, we have the added guidance of the recent decision of the Supreme Court of the United States in Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed. 2d 663. Therein, it was determined that the "political question doctrine" might make non-justiciable those cases wherein there was found, l. c. 217, 82 S.Ct. l. c. 710, "a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question." The court also concluded that a political question could result if it were found that any one of the factors listed was inextricably present.

■ As is obvious by Art. III, Sec. 18, of the Constitution of Missouri, the people of this state have specifically made a "textually demonstrable constitutional commitment" to its house of representatives power to be the "sole judge" of the qualifications of its own members. That fact is not debatable. The scope of this constitutionally delegated power recently has been not only recognized but more precisely defined by the Supreme Court in Bond v. Floyd, 385 U.S. 116, 87 S.Ct. 339, 17 L.Ed.2d 235, and Powell v. McCormack, 395 U.S. 486, 89 S. Ct. 1944, 23 L.Ed.2d 491. *Bond* considered exercise of the power by the legislative department of a state and *Powell* the exercise of a similar power by the house of representatives of Congress. In each case, while considering a question of "exclusion" of a potential member and not the power of "expulsion," the court held that the power, so delegated, was limited to a determination by the legislative body of whether or not that person challenged met those standards constitutionally established. The constitution of this state, Art. III, Sec. 4, provides that age, qualification as a voter and residency are to be standing qualifications, and as such, both by historical precedent and the recent articulations of the Supreme Court, necessarily come within the scope of the power so delegated. Such a conclusion is not indicative of a reluctance of this court to accept its responsibility as the ultimate interpreter of the constitution, but to the contrary, it is evidence of this court's appreciation of its duty to interpret the constitution as it was written by and for the citizens of this state. We have the duty and obligation to protect the right of the legislative department, as we would also the executive branch, to exercise those powers specifically delegated to it in the same manner we would a similar challenge to the powers of the judiciary. Refusal to do as much would constitute an encroachment upon the legislature by this court and do violence to that separation of powers so fundamentally vital to our form of government. Art. II, Sec. 1, Constitution of Missouri, 1945. "For any one of the three equal and co-ordinate branches of government to police or supervise the operations of the others strikes at the very heart

and core of the entire structure." Am.Jur. 2d, *Constitutional Law*, Sec. 213. Although now specifically incorporated in the constitution of the federal government and the many states, the power of a legislative body to judge the qualifications of its own members is of ancient origin. "The history of the doctrine reveals that it was established in the constitutional law of England in the year of 1586, during the reign of Queen Elizabeth." *Lucas v. McAfee*, 217 Ind. 534, 29 N.E.2d 403, 405. Although fully convinced of the correctness of our decision, we could not deny taking some solace in the fact that no case has been cited, nor has our research revealed any, in which any court has ever ruled otherwise. *Hiss v. Bartlett*, 69 Mass. 468, 473, 63 Am.Dec. 768; *State ex rel. Acker v. Reeves*, 229 Ind. 126, 95 N.E.2d 838; *French v. State Senate*, 146 Cal. 604, 80 P. 1031; *State ex rel. Ford v. Cutts*, 53 Mont. 300, 163 P. 470; *Rainey v. Taylor*, 166 Ga. 476, 143 S.E. 383; *Reif v. Barrett*, 355 Ill. 104, 188 N.E. 889; *Lessard v. Snell*, 155 Or. 293, 63 P.2d 893; *Bowling v. Weakley*, 181 Md. 496, 30 A.2d 791; *Preisler v. Doherty*, 364 Mo. 596, 265 S.W. 2d 404. It has not been alleged that respondent has changed his residence since he was originally found qualified, and we express no view on the provisions for "expulsion" or for forfeiture found in Art. III, Sec. 13.

■ We next consider the petitioner's arguments that: (1) "The equal protection clause of the Fourteenth Amendment is violated when the State fails to apply its qualifications for legislative representation uniformly on behalf of all residents of the State," and, (2) "Abridgment of the equal protection clause makes this case justiciable and overrides the provisions of the state constitution establishing each house of the legislature as judge of the qualifications of its members." Obviously, the generalization expressed in Point (2) is well taken, as this court recognizes that when a federal constitutional right conflicts with a state constitutional provision, it is our duty to enforce the former by virtue of the su-

premacy clause. Art. VI, United States Constitution. *Testa v. Katt*, 330 U.S. 386, 67 S.Ct. 810, 91 L.Ed. 967; *Cooper v. Aaron*, 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed.2d 5. However, this duty comes into play only when it becomes apparent there has been, in fact, a denial of some federally protected right.

Petitioner concedes that there is no judicial precedent on the specific issue submitted. However, argument is made that residency is a critical aspect of representative government, and that quality of representation is "dependent on the person so elected sharing a community of interest with an understanding of the problems of his constituents." From this premise, it is asserted that residents of the 54th Legislative District are being denied this benefit and thus are deprived of the equal protection of the laws. By analogy, petitioner relies on *Baker v. Carr*, supra, and *Reynolds v. Sims*, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506. Each of which involved legislative apportionment and held that the equal protection clause had been violated by continuing legislative inaction shown by failure to reapportion districts to conform to the one-man one-vote principle. Inaction was found to be an unavailing answer when there was an affirmative duty to act. However, in the instant case, "inaction" has neither been alleged nor proven. From the record before this court, there is no showing that the legislative body neglected its constitutional duty and failed to act in the premises. In view of respondent having been given the oath of office, absent a charge to the contrary, we must assume that his qualifications were resolved in compliance with the constitutional mandate. In other words, the information as filed does not charge an "invidious" discrimination by inaction, but suggests, by implication only, that the legislature reached an erroneous conclusion in the case of respondent. Neither is it alleged that such a decision, even if in error, was the result of an arbitrary or discriminatory failure to apply uniform standards; nor is there any contention or suggestion that facts known to petitioner

were available or have been called to the attention of the legislature, that it might reconsider its decision if it were found to be ill founded. By these comments, we do not infer the result herein reached would be different, but they are made for the purpose of pointing up the absence of an important factor distinguishing this case from *Baker* and *Reynolds,* supra. For in each, the fact a legislative body evidenced continuing inaction and showed no willingness to assume its obligation was found to be further justification for a court to assume jurisdiction.

Further, we are not inclined to accept the analogy suggested in view of the declarations to the contrary in two recent opinions of the Supreme Court. Justice Douglas, while concurring in Baker v. Carr, supra, 369 U.S. 1. c. 246, 82 S.Ct. 1. c. 725 said, "Where the Constitution assigns a particular function wholly and indivisibly to another department, the federal judiciary does not intervene," and later in Powell v. McCormack, supra, 395 U.S. 1. c. 552, 89 S.Ct. 1. c. 1980, "Contests may arise over whether an elected official meets the 'qualifications' of the Constitution, in which event the House is the sole judge." We further add, that the instant case is also distinguishable, from those cited, by virtue of the fact the deprivation, if any, was self created and is subject to remedy by the same process that created it.

■ Even though it be assumed that the legislature has erred in this isolated instance (respondent is one of 163 members), we respect the desire of the members thereof to act conscientiously. "The legislative function, except as limited by state or national constitutions, is equal and not subordinate to the judicial function, and the legislature is the ultimate guardian of the liberties and welfare of the people in quite as great a degree as the courts." 16 C.J.S. Constitutional Law § 106, p. 491.

Finding the information fails to state a justiciable cause of action, respondent's mo-

tion to dismiss is sustained. Costs are assessed against petitioner.

HENLEY, C. J., and DONNELLY and HOLMAN, JJ., concur.

FINCH, J., and FRED L. HOWARD, Sp. J., concur in result in separate concurring opinions filed.

SEILER, J., dissents in separate dissenting opinion filed.

FINCH, Judge (concurring).

I concur in the conclusion reached in the principal opinion that we should not oust respondent Banks in this proceeding. In so doing, however, I would not reach or decide the issue of whether or not this court has a right to inquire into the right of a legislator to continue to hold his office when an attack thereon arises as to his qualifications under Art. III, § 4 or 13 of the Constitution of Missouri, 1945. The Attorney General's brief does not ask that we enforce the Missouri constitutional provisions and oust respondent on the basis thereof. Instead, the sole basis advanced by petitioner's brief for ousting Banks is that he was not a resident of his district as required by the Missouri Constitution, resulting in a violation of the equal protection clause of the Fourteenth Amendment to the Constitution of the United States. This equal protection issue is the only question briefed and relied on by the Attorney General and the only question we are called upon to decide herein.

The Attorney General recognizes that there is no requirement in the Federal Constitution that a state require a legislator to live in the district from which he is elected. Nevertheless, he says that since the State Constitution so requires, a failure to enforce that requirement uniformly as to all districts in the state constitutes unequal treatment of the residents of the districts

and therefore violates the federal equal protection clause.

Considerable reliance is placed by petitioner on the cases of Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663, and Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506. The basic principle established in these so-called one man, one vote cases is that the Constitution of the United States protects the right of all qualified citizens to vote and to have their votes counted, and that this includes protection from having one's vote diluted or debased. The rule is established therein that apportionment of legislative districts must be made in such a manner as to give equal weight to the votes of all. In this quo warranto proceeding there is no contention advanced that the votes of the residents of the 54th Legislative District were diluted or that their votes did not count for as much as votes of persons in other districts in the state. Instead, the petitioner says that the election of respondent, who did not live in the 54th Legislative District,[1] resulted in unequal protection to them in that their representative did not know the problems of the district or share their interest as is true in the case of legislators who are residents of their districts. So far as I can ascertain, the United States Supreme Court has not up to this time held that failure of a state to enforce a state eligibility requirement for legislators, such as residence or age, would violate the equal protection clause of the Fourteenth Amendment. Nor is any case cited from which I can conclude with confidence that the Supreme Court would so hold if and when such issue is presented to them. Nonresidence of the legislator elected is not necessarily comparable to situations in which the votes of persons are diluted by unequal apportionment of the districts, and in the absence of a determination by the Supreme Court of the United States that failure on the part of the state to enforce its residence or age requirements constitutes a violation of the equal protection clause of the Fourteenth Amendment, I do not believe that we as a state court should further extend the application of this federal constitutional provision.

Petitioner also cites and relies upon Bond v. Floyd, 385 U.S. 116, 87 S.Ct. 339, 17 L.Ed.2d 235. In that case the Georgia House of Representatives undertook to deny membership to Bond on the basis of statements he had made criticizing the policy of the Government in Vietnam and the operation of the Selective Service System. The Supreme Court held that this action by the Georgia House of Representatives violated Bond's First Amendment rights and that the House of Representatives could not refuse to seat him on that basis. I do not consider that the Bond case is at all analogous to the situation here presented.

Accordingly, I would hold simply that no violation of the equal protection clause of the Fourteenth Amendment to the Constitution of the United States has been shown, and since this is the only basis briefed and argued by the Attorney General for ousting respondent, I would hold in favor of the respondent and dismiss the quo warranto proceeding.

FRED L. HOWARD, Special Judge (concurring).

I concur in the result of refusing to order ouster. However, I reach this result because I do not believe that the record

---

1. Our Special Commissioner, based on the evidence which he took, found that respondent Banks did not reside in the 54th Legislative District for the entire year next before the date of his election. The evidence is amply sufficient to sustain that finding. The respondent did not testify before the Special Commissioner, nor did his wife, and when relator by pretrial discovery sought to have them answer interrogatories or to give their depositions as to their place of residence, they invoked the Fifth Amendment to the Constitution of the United States and declined to answer.

in this case presents any issue requiring a ruling on the merits thereof.

The evidence abundantly supports the finding of the commissioner that respondent was not a resident of his district as required by the Missouri Constitution. This fact situation raises three possible issues, two under the Missouri Constitution and one under the United States Constitution. These are: (1) respondent's disqualification under Article III, Section 4, of the Missouri Constitution (which requires that each representative next before the day of his election shall have been a resident of the district which he is chosen to represent for one year) and this court's jurisdiction to oust respondent because of such disqualification in view of the provision of Article III, Section 18, that each house of the General Assembly shall be the sole judge of the qualifications of its own members; (2) respondent's forfeiture of his office because of removing his residence from the district for which he was elected, as provided in Article III, Section 13, of the Missouri Constitution; and (3) the violation of the equal protection clause of the Fourteenth Amendment to the United States Constitution resulting from the representation of the residents of respondent's district by a nonresident.

The information in the nature of quo warranto filed by the Attorney General in this case does not plead forfeiture under Article III, Section 13, of the Missouri Constitution (number 2 above), and does not pray for relief on that basis. Likewise, relator's brief in this court does not contend for ouster on this basis. I, therefore, concur with Judge Morgan's opinion that this issue is not before us for decision.

As to the first issue listed above, i. e. respondent's disqualification because of nonresidence and this court's jurisdiction to take action based thereon, relator does raise this issue in his pleading but the question is not briefed by him in this court. Respondent's brief does attack the juris-diction of this court but relator's brief does not urge that we do have jurisdiction to act on this basis. Thus, this question is not properly before this court for consideration and should not be decided. The jurisdictional question involved is one of considerable difficulty and uncertainty and should not be decided without complete briefing on both sides of the question. Further, the record in this case is silent, both in pleading and proof, as to what occurred in the legislature, either at the time respondent was seated or afterwards. For all that appears in the record, respondent may have been seated through sheer oversight or inadvertence. This court cannot base its decision on what its members may individually and personally know. Such a record does not require a decision on this difficult and important jurisdictional question.

I, therefore, concur with Judges Finch and Seiler that the only issue properly briefed, argued and submitted to this court is the one having to do with equal protection. However, I must agree with Judge Morgan that " 'inaction' has neither been alleged or proven". The Fourteenth Amendment to the Constitution of the United States provides that no state shall deny to any person within its jurisdiction the equal protection of the laws. While inaction may amount to denial as is shown by the cases cited in Judge Morgan's opinion, (see Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663, and Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506), the record in the case at bar does not show that this is not an isolated instance and does not show that it is not the result of inadvertence. Consequently, I do not believe that the inaction shown by the record amounts to denial and I do not believe that the proven fact of nonresidence, plus our judicial knowledge that this General Assembly has met in four different sessions, as pointed out by Judge Seiler, is sufficient to raise this case to the stature necessary to show a violation of equal protection. This is not to be under-

stood to mean that I believe that if this situation were the result of knowing inaction or refusal to act on the part of the legislature, this court should not grant ouster. It simply means that "inaction" which will result in a violation of equal protection must be knowing inaction and, regardless of our personal knowledge, the record before us does not demonstrate that there was knowing inaction on the part of the House of Representatives.

For these reasons, I concur in refusing to oust respondent.

SEILER, Judge (dissenting).

I agree with Judge Finch that the equal protection issue is the question which was briefed, argued, and which must be decided in this case. What we would do if we were deciding this case solely on the provisions of the Missouri Constitution (as was the case in Bond v. Floyd, 385 U.S. 116, 87 S.Ct. 339, 17 L.Ed.2d 235, where the question was whether Georgia could add qualifications beyond those set by the state constitution, and as was the case in Powell v. McCormack, 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491, where the House of Representatives was attempting to add to the qualifications stated in the federal

constitution) is beside the point. Nor does the matter of "a textually demonstrable constitutional commitment of the issue [by the Missouri Constitution] to a coordinate political department" [the Missouri House of Representatives] meet the equal protection issue raised, because as the majority opinion well says, we recognize " * * * that when a federal constitutional right conflicts with a state constitutional provision, it is our duty to enforce the former by virtue of the supremacy clause. Article VI, United States Constitution * * *." We observe, also, that in Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663, from which the "textually demonstrable constitutional commitment" language is taken, the appellants' claim that they were being denied equal protection was nevertheless there held justiciable. The "textually demonstrable" doctrine relates to the relationship between coordinate branches of the same government and " * * * is primarily a function of the separation of powers * * *", Baker v. Carr, supra, 369 U.S. 1. c. 210, 82 S.Ct. 1. c. 706, but the claim here asserted is a federally protected right and involves different governments, not merely separate branches of the same one.[1] As in Baker v. Carr, the question here is " * * * the consistency of state action with, the Federal Constitution

1. It does not seem to me that the language of Justice Douglas from Baker v. Carr, supra, and Powell v. McCormack, supra, quoted on page 6 of Judge Morgan's opinion supports the proposition that because the Missouri Constitution provides each house shall be the sole judge of its qualifications, we are powerless to act in this case.

In both Baker v. Carr and Powell v. McCormack, Justice Douglas was referring to a situation where the federal constitution having assigned a particular function to another department of the federal government, the federal judiciary will not intervene. In Baker v. Carr, he supported his statement by citing Oetjen v. Central Leather Co., 246 U.S. 297, 302, 38 S.Ct. 309, 62 L.Ed.2d 726, which held that since the federal constitution commits the conduct of foreign relations to the executive and legislative branches,

the exercise of such political power was not subject to the federal judiciary. In Powell v. McCormack, he was pointing out that Congress had no power to alter the constitutional qualifications for membership and in the next sentence after that quoted by Judge Morgan, Justice Douglas went on to say, " * * * But the House is not the sole judge when 'qualifications' are added which are not specified in the Constitution", 395 U.S. 1. c. 552, 89 S.Ct. 1. c. 1980.

I do not believe that Justice Douglas' words can be taken as holding in any way that the commitment by the Missouri Constitution to the House of Representatives to be the sole judge of the qualifications of its members bars us from acting in this case, where there is a federally protected right to equal protection being denied as result of the failure of the House to act.

* * * ", 369 U.S. 1. c. 226, 82 S.Ct. 1. c. 715, and there is no question decided or to be decided by a political branch of Missouri government which could override the right to equal protection guaranteed by the 14th Amendment of the federal constitution.

Respectfully, I am unable to agree with Judge Morgan that "inaction" on the part of the legislature has not been proven, or with Judge Finch that there has not been a violation. of the equal protection clause of the 14th Amendment. I would grant ouster.

On the first point: On the record before us, there can be no doubt as to the correctness of our commissioner's findings that respondent, although seated as a member of the 54th district following the November 5, 1968 election, did not in fact reside in the 54th district for the entire year next before the day of his election or for all of the period after the election, but was, in fact, a resident of an entirely different district, the 40th, residing therein at 1615 Bredell Avenue, Richmond Heights. The record shows there is a home at this address, with a garage, yard, and a back yard with a barbeque pit. This is where respondent and his wife were seen going and coming. It is where respondent put up Christmas tree lights and the address from which he complained to the police that children were stealing Christmas tree lights from his front yard. This is the house and address where respondent barbequed, where his wife put out the trash cans, where he removed grass trimmings, where mail was delivered to him. The joint income tax returns for respondent and his wife for 1966 and 1967 showed 1615 Bredell Avenue as their home address. Respondent's driver's license application gave 1615 Bredell as his address. Mrs. Banks gave it as her address on her application for renewal of her nurse registration. Electric and water utilities showed respondent as the customer at the address.

Although respondent attempted to make a factual showing as to residency by calling several of his own witnesses, it is highly significant that the man who should know the most about it, respondent himself, saw fit not to testify. This is not a criminal case. There is no presumption of innocence .involved and the ban against attaching significance to the failure of the defendant to take the stand does not apply. It is reasonable to conclude that respondent did not testify for the reason his testimony would have been unfavorable to him. Respondent's wife did not testify either. In sum, there is a complete absence of any convincing evidence in the record contrary to our commissioner's findings.

Under these circumstances I do not see where we can indulge the assumption that the legislature has not neglected its duty and failed to act. This legislature, the Seventy-Fifth General Assembly, has been in session several times, twice in 1969 and twice so far in 1970, yet respondent continues in office.[2] Under the record before us, at none of the times material to the residency issue, could the House have made a finding supported by any reasonable evidence that respondent met the residency requirements of the Missouri Constitution. There has been a clear showing of continuing inaction and no evidence of willingness to act on the part of the legislature.

On the second point: As Judge Finch says, petitioner is not arguing that the votes of the residents of the 54th district were diluted, but does argue that the election of respondent, a nonresident of the district, resulted in unequal protection to them, because they, unlike the residents in the other districts over the state, were denied representation by one of their own residents and

2. The regular session ran from January 8 to June 30, 1969, the first extraordinary session from September 8 to September 30, 1969, the second extra session from January 19 to February 2, 1970, and the third extra, commencing April 15, 1970, is still in session.

were represented by an outsider—a sort of carpetbagger in reverse situation. It cannot be doubted that Missouri places a high value on the right of voters in a particular district to be represented by a representative who resides in their district. The Missouri Constitution is at pains to make this a requirement for election and for remaining in office, Art. III, Secs. 4 and 13. It is a substantial and not a trivial right of the voters. Here it is being denied the voters of the 54th district in a way that denies them equal protection. Not only are they denied equal protection once the election is over, as compared to those who have a representative who resides in the district in the matter of knowing the problems of the district and sharing the interests of the residents thereof, they are denied equal protection in the election itself. For in the 54th district, the only way a voter could vote for a candidate who, if elected, would be a resident of the district, would be to vote for respondent's opponent. Thus, a voter who wanted to vote for a candidate who resided in the district, actually had no choice in the 54th district. He could do this only by voting for respondent's opponent, even though the latter might not be of the voter's political party. Contrast this with the other legislative districts over the state where both candidates at the general election were residents of the district. The voter in such a district had a choice: either one could be elected and the voter would still be represented by a resident of the district.

It does not seem to me that merely because the United States Supreme Court has not yet passed on the situation before us means we should close our eyes to this denial of equal protection. If there is a denial of equal protection, as I believe there is, then I think we are obligated to remedy it, Art. VI, United States Constitution; Art. I, Sec. 4, Art. VII, Sec. 11, Missouri Constitution of 1945. I would therefore be in favor of ouster.