STATE of Missouri ex rel. James M. CARRINGTON, Plaintiff,

v.

F. William HUMAN, Jr., et al., Defendants,

and

James Whitmore, Intervenor.

No. 59912.

Supreme Court of Missouri, En Banc.

Dec. 21, 1976.

Rehearing Denied Dec. 27, 1976.

Murray Stone and Susan E. Block, St. Louis, for plaintiff.

Norman C. Parker, Timothy G. Noble, St. Louis, for respondents.

Walter H. Sheata, St. Louis, for intervenor.

SEILER, Chief Justice.

This is a petition for a writ of prohibition which we transferred prior to opinion by the court of appeals, St. Louis district. Rule 83.06.

In the Democratic primary election for state representative from the 67th legislative district, intervenor Whitmore defeated his incumbent rival, relator Carrington. Through separate prohibition proceedings instituted after the primary election in both circuit court and court of appeals, St. Louis district, Carrington succeeded in preventing Whitmore's name from appearing on the general election ballot because the circuit court found that Whitmore did not reside in the district which he sought to represent. Whitmore has appealed the circuit court judgment.[1] Since there was no Republican candidate for the office, no names appeared on the general election ballot. Consequently, the only votes were write-ins, of which we are informed Whitmore received the largest number. Carrington was second. Then after the general election, Carrington succeeded in obtaining a preliminary writ of prohibition from the St. Louis district which prevented the appropriate election boards from transmitting Whitmore's general election vote totals to the Secretary of State, but no one else's. Consequently, Carrington's vote totals were forwarded. The St. Louis district was about to make its writ absolute when we transferred the cause. We hold that Mo.Const. Art. III, § 18, prevents us from issuing our writ as relator Carrington requests.

In oral argument, relator Carrington framed the issue before us as follows:

"In light of a candidate's ineligibility having been determined by a judicial proceeding prior to a general election, should the defendants [election boards] be permitted to send to the Secretary of State the number of write-in votes cast for said candidate whom defendants know to be ineligible as a result of defendants being parties to said judicial proceeding?"

Relator's formulation fails to recognize the more crucial threshold question of our power and right to pass upon the issue presented—that is, whether, in the face of the constitutional provisions of Art. III, we should interfere with the forwarding of the write-in vote totals received by the candidates, including intervenor, from the election boards to the Secretary of State. As will be seen, because the constitutional deadline which confronts the court has long since passed, we cannot provide the relief relator seeks.

The Missouri Constitution, Art. III, § 18, provides: "Each house [of the General Assembly] . . . shall be sole judge of the qualifications, election and returns of its own members . . . ." Relator asks us, in effect, to determine the qualifications and election of members of the House of Representatives after the general election in contravention of our Constitution by prohibiting the election boards from transmitting Whitmore's vote totals to the Secretary of State. We have always refused to decide these questions after the general election in accordance with the mandate of Art. III, § 18. State ex inf. *Danforth v. Hickey,* 475 S.W.2d 617, 618–19 (Mo. banc 1972); State ex inf. *Danforth v. Banks,* 454

1. Whitmore's appeal is pending in the court of appeals, St. Louis district. It would appear to be moot, the election having already occurred, and there being no way, even if he were to prevail on appeal, that his name could be restored to the ballot.

S.W.2d 498, 500 (Mo. banc 1970). Consistent with both the language and history of Art. III, § 18, however, we will continue to explore such questions as presented by relator only before the general election. State ex rel. *Gralike v. Walsh,* 483 S.W.2d 70 (Mo. banc 1972).

The reason for the general election cutoff date is twofold. First, the history of Art. III, § 18, indicates that when it was incorporated into our constitution, its mandate included only the general election. The applicable provision of Art. III, § 18, is identical to its predecessor, Art. IV, § 17, of the 1875 Missouri Constitution. Primary elections, however, did not become the method of party candidate selection until 1907. Laws 1907, p. 263. Subsequent constitutional conventions have had opportunities to change the language of the provision to cover primary elections, but they chose not to do so. Second, and even more compelling, is the language of Art. III, § 18. It states that the House shall be the sole judge of its members' qualifications and election. Until the general election no one is elected, and the question is only one of an individual's qualifications to be a candidate for election, not of a member's qualification. Moreover, the general election is a foundation of the legislative branch of government and to interfere would not only violate Art. III, § 18, but also do damage to the concept of separation of power, a foundation upon which all three branches of government are built.

Another argument is implicit in the way in which relator frames the issue. To his mind, the judicial determination of Whitmore's ineligibility before the general election is somehow a foot in the door which will stay the effect of the general election and keep the door propped open. This argument is without merit. There is nothing a court can do to prevent the general election from bringing Art. III, § 18, into effect. Time and time again, courts have the power and right to decide a case only to find that before acting they have lost their power through the mere passage of time and occurrence of events. The passage of time and occurrence of events often render undecidable causes of action at various stages of the judicial process, and courts recognize this process by various names such as mootness, nonjusticiability, political question, or lack of jurisdiction. In any of these cases, the court is powerless to regain its ability to decide.

The parties must present the case and the court must act. In the case before us, Art. III, § 18, requires us to act either before the general election or not at all. The door has now shut, the forum has shifted, and we will not indulge in the impermissible assumption that the legislature will not faithfully discharge its duty under Art. III, § 18, as relator would have us believe.

Therefore, the preliminary writ of prohibition is quashed. The respondent boards of election commissioners of St. Louis City and St. Louis County are ordered to forward, forthwith, to the Secretary of State the number of write-in votes cast for intervenor, James Whitmore, in the November 2, 1976, election for the office of state representative from the 67th legislative district. Upon receipt of said vote totals, the Secretary of State, Honorable James C. Kirkpatrick, is ordered to include the same in the vote returns of said respondents and then to proceed to cast up the write-in votes given for all candidates for the office of state representative from the 67th legislative district and shall give to the person having the highest number of votes a certificate of election and further proceed as required by law.

MORGAN, HOLMAN, BARDGETT, HENLEY, and FINCH, JJ., concur.

DONNELLY, J., concurs in result in separate opinion filed.

DONNELLY, Judge, concurring in result.

I concur only in the result for at least two reasons:

(1) *State ex rel. Gralike v. Walsh,* 483 S.W.2d 70 (Mo. banc 1972), cited with approval in the principal opinion, merely perpetuates the fiction that the courts, even before a general election, may usurp the

right of each house of the General Assembly to be the sole judge of the qualifications of its own members. Mo.Const. Art. III, § 18. I would disavow the holding in *Gralike.*

(2) I doubt the present constitutional viability, under the "compelling state interest" standard articulated in *Dunn v. Blumstein,* 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274, of that portion of Mo.Const.Art. III, § 4 which requires that each representative shall have been a resident of the district which he is chosen to represent for one year. The justifications for upholding the constitutionality of such a provision (e. g. ensuring that the representative is exposed to the problems, needs and desires of the people and that they have a chance to observe him and gain first-hand knowledge of his habits and character—Cf. *Chimento v. Stark,* 353 F.Supp. 1211, affirmed 414 U.S. 802, 94 S.Ct. 125, 38 L.Ed.2d 39) are no longer available to Missouri because of the decision in *State ex rel. King v. Walsh,* 484 S.W.2d 641 (Mo. banc 1972) which holds that a provision for residency for a given period of time "does not mean and require actual, physical presence * * *." (484 S.W.2d, at 644).